Commonwealth *v.* Gochenaur, Appellant.

590

Argued March 19, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William A. Atlee, Jr.,* with him *Geisenberger, Zimmerman, Pfannebecker & Gibbel,* for appellant.

*Michael H. Ranck,* Assistant District Attorney, with him *Mary Anne Motter,* Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 24, 1975:

Appellant was found guilty by a jury of involuntary manslaughter[1] and failing to stop and render assistance[2]

---

1. Act of June 24, 1939, P.L. 872, §703, former 18 P.S. §4703. Under the 1939 Penal Code, involuntary manslaughter is a misdemeanor, carrying a maximum penalty of three years' imprisonment or a $2000 fine, or both.

2. Act of April 29, 1959, P.L. 58, §1027, 75 P.S. §1027. A failure to stop and render assistance is a misdemeanor punishable

in connection with a fatal automobile accident. Appellant contends that the lower court erred in denying his motion for a demurrer to the manslaughter charge because the Commonwealth failed to produce sufficient evidence to convict. In regard to the charge of failing to stop and render assistance, appellant argues that testimonial reference by the Commonwealth to his silence during custodial interrogation requires that a new trial be granted.

At approximately 12:15 a.m. on January 6, 1973, a hit and run accident occurred on Lancaster Avenue in Columbia Borough. The evidence produced at trial indicates that Maria Santiago, who died as a result of the injuries she sustained in the accident, and Donna Haug were walking on the north side of Lancaster Avenue. The highway does not have sidewalks but there is a gravel berm approximately three feet wide. The investigating officers determined the point of impact from the location of the victim's pocketbook and apron. The victim's body came to rest 122 feet away from the point of impact. Although she was unable to witness the accident because she was walking slightly ahead of the victim, Donna Haug testified that the deceased was walking entirely on the berm. The point of impact is located at a slight curve with little illumination. There was no evidence of skid marks at the scene, and the Commonwealth offered no testimony concerning the speed of the automobile which struck Maria Santiago.

Several people at the spot where the deceased's body came to rest informed the police that the car was a dark-colored, late model with possible damage to its right front fender and a missing headlight. The police immediately issued a county-wide call for assistance in locating the car. The police gathered small pieces of glass and paint chips from the area around the point of impact and from

---

by a maximum of three years' imprisonment or a fine of $200, or both.

the deceased's body. On the afternoon of January 6, 1973. Officers Roberts and Landis of the Columbia Police Department were notified by a third policeman that an automobile answering the description given by the witnesses was located at the Grinnell parking lot in Columbia. The two officers brought the paint samples with them when they went to investigate the lead. Upon observing that the automobile fit the general description and that the paint on the vehicle seemed to match the paint samples, the officers believed that probable cause to remove paint samples from the automobile existed. Officer Landis remained at the parking lot while Officer Roberts obtained a search warrant. Upon returning, Officer Roberts took paint samples from the car and sent them to the police laboratory along with the paint samples obtained from the scene of the accident and from the deceased's body.

The officers determined that the car was registered to appellant. At approximately 3:30 p.m., appellant came out of the Grinnell plant and approached his car. The officers read the search warrant to him, infomed him of his constitutional rights, and asked him to accompany them to the police station. At the station, appellant was again given "Miranda" warnings.[3] Officer Roberts testi-

---

3. Appellant's pre-trial motion to suppress evidence focused mainly on the validity of the search warrant authorizing the taking of paint samples from appellant's automobile. However, the motion to suppress did request the suppression of all statements appellant made during custodial interrogation. At the suppression hearing, the Commonwealth offered no evidence in regard to whether appellant had been given proper "Miranda" warnings. At trial, Officer Roberts testified that he asked appellant whether he had hit Maria Santiago, and that appellant replied "I don't know." Defense counsel immediately objected because the Commonwealth had failed to prove at the suppression hearing that the statement was admissible. The trial judge, implying that appellant's contention was well-taken, offered to recess the jury and hold an additional suppression hearing. Defense counsel stated that he did not want the jury dismissed, but maintained his objection to the

fied that during the interrogation appellant asked if he could contact an attorney. The following colloquy took place at trial:

"Q. Did the Defendant say when this damage occurred to his vehicle?

"A. No, he just said he was in Ely's the night before.

"Q. This would have been Friday night?

"A. Friday evening. And that the damage occurred then, but he didn't elaborate on how it happened. At this point he asked for a lawyer. He asked if he could call a lawyer and Officer Smith gave him the telephone and he contacted Mr. Donald Nikolaus. At which time Mr. Nikolaus advised him over the phone to not say anything and made an appointment with Mr. Gochenaur to come to his office the next day.

"THE COURT: Not say anything?

"THE WITNESS: Correct. Mr. Nikolaus instructed Mr. Gochenaur to say nothing.

"[DEFENSE COUNSEL]: I must object to this testimony at this point. I don't think, first of all, what an attorney tells a client over the telephone is proper evidence.

"THE COURT: Did you hear—did the Defendant say he was told that?

"THE WITNESS: Yes, Mr. Gochenaur said the attorney told him not to say anything.

"THE COURT: I'll admit—he said the lawyer said he was not to talk to anybody. You'll disregard what might have been hearsay when the lawyer talked to the Defendant, but not the testimony of the Defendant that he told the officer that his lawyer told him not to say anything.

"Exception noted."

admission of the statement. The court concluded: "Not an objection. Exception noted." In its opinion, the lower court states that appellant waived his objection. In view of our disposition of appellant's other contentions, this issue need not be reached.

After Officer Roberts answered several more questions, defense counsel moved for a mistrial, which was denied. Appellant was arrested on January 10, 1973, after the police received verbal confirmation from the laboratory that the paint obtained at the scene and the paint taken from appellant's car matched.

Appellant first contends that the evidence was insufficient to convict him beyond a reasonable doubt of involuntary manslaughter. When an appeal follows a judgment of sentence, and a ruling on a demurrer is questioned, "the defendant will be discharged only if all evidence in the case, including that introduced as a defense, after the entry of the demurrer is insufficient to support the jury verdict." *Commonwealth v. Fuchs,* 227 Pa. Superior Ct. 563, 564, 323 A. 2d 829 (1974). The test of sufficiency of evidence is whether, "accepting as true all the evidence and all reasonable inferences therefrom, which if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted . . . . Moreover, the evidence must be viewed in a light most favorable to the . . . verdict winner, and the [verdict winner] is entitled to all reasonable inferences arising from the evidence." *Commonwealth v. Thomas,* 459 Pa. 371, 378, 329 A. 2d 277, 280 (1974). Applying the appropriate test, the record indicates that the Commonwealth's evidence in regard to involuntary manslaughter was insufficient.

Involuntary manslaughter has been defined as "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Commonwealth v. Mayberry,* 290 Pa. 195, 198, 138 A. 686 (1927). Despite the use of the word "negligent," our Courts have consistently followed the rationale set forth in *Common-*

*wealth v. Holman,* 160 Pa. Superior Ct. 211, 212, 50 A. 2d 720 (1947) : "Where the act in itself is not unlawful, that is, contrary to law, then to make it criminal, negligence must be such a departure from what would be the conduct of an ordinary prudent man under the same circumstances as to evidence a disregard of human life or an indifference to consequences." *See also Commonwealth v. Busler,* 445 Pa. 359, 284 A. 2d 783 (1971); *Commonwealth v. Feinberg,* 433 Pa. 558, 253 A. 2d 636 (1969); *Commonwealth v. LaPorta,* 218 Pa. Superior Ct. 1, 272 A. 2d 516 (1970); *Commonwealth v. Zeringo,* 214 Pa. Superior Ct. 300, 257 A. 2d 692 (1969); *Commonwealth v. Clowser,* 212 Pa. Superior Ct. 208, 239 A. 2d 870 (1968). Even the commission of an unlawful act, however, does not necessarily bring the defendant within the accepted definition of involuntary manslaughter. Our Court has stated "that the driver's conduct must be reckless, careless, or wanton before he may be convicted of involuntary manslaughter by automobile. Were we to hold otherwise, the Commonwealth might obtain a conviction for manslaughter based upon a violation of a regulatory statute, where the conduct involved might not support a civil suit." *Commonwealth v. Clowser,* supra, 212 Pa. Superior Ct. at 214, 239 A. 2d at 873. This rationale has been approved by our Supreme Court: "Hence, to sustain a conviction of involuntary manslaughter for a death resulting from an act which constitutes a transgression of The Vehicle Code, it must be established that such violation in itself, or together with the surrounding circumstances, 'evidence a disregard of human life or an indifference to consequences.' " *Commonwealth v. Busler,* supra, at 361, 284 A. 2d at 784. *See also Commonwealth v. Root,* 403 Pa. 571, 170 A. 2d 310 (1961).

In the present case, the Commonwealth produced no evidence to prove that appellant committed an unlawful act. Thus, unlike *Commonwealth v. Morris,* 205 Pa. Superior Ct. 105, 207 A. 2d 921 (1965) (defendant made

a "U-turn" on the Pennsylvania Turnpike), and *Commonwealth v. Smoker*, 204 Pa. Superior Ct. 265, 203 A. 2d 358 (1964) (defendant's car was on the wrong side of the center line), the Commonwealth in this case cannot rely on the violation itself as an indication of recklessness. Rather, the conviction can be sustained only if the record contains sufficient evidence of "other circumstances" so that the jury could infer that appellant's actions were reckless.

The Commonwealth did prove that the deceased's severely bruised and battered body was found 122 feet from the point of impact. The Commonwealth, however, never introduced the lawful rate of speed for Lancaster Avenue, and produced no testimony at all concerning the speed at which appellant's automobile was travelling at the time of the accident. Considering that the accident occurred around midnight, at a point immediately after a curve on a poorly-lit road with no sidewalks, it is difficult, if not impossible, to state that appellant's conduct amounted to anything more than ordinary negligence. The cases cited by the Commonwealth involved far more substantial evidence of recklessness than was presented below. For example, in *Commonwealth v. Rosenberger*, 183 Pa. Superior Ct. 401, 132 A. 2d 359 (1957), an eyewitness to the accident testified that defendant's automobile was travelling at too great a speed to enable defendant to stop in time to avoid striking a pedestrian crossing an intersection. In *Commonwealth v. Hicks*, 203 Pa. Superior Ct. 307, 201 A. 2d 294 (1964), the defendant passed through an intersection when the light was red at fifty miles per hour. In the present case, the only possible indication of excessive speed was that the deceased's body came to rest 122 feet from the point of impact, but *Commonwealth v. Zeringo*, supra, held that "the distances to the body and the place where appellee's automobile was stopped after the accident [do not] raise inferences of excessive speed prior to impact sufficient to meet the

Commonwealth's burden. . . ." 214 Pa. Superior Ct. at 303, 257 A. 2d at 694, despite the fact that the deceased's body came to rest approximately 150 feet from the point of impact. Thus, the Commonwealth did not prove that appellant's conduct was reckless.

Appellant did not demur to the charge of failing to stop and render assistance, and there is no question that the Commonwealth presented sufficient evidence to support the conviction. Appellant contends, however, that the lower court committed reversible error in allowing Officer Roberts's testimony concerning appellant's request to contact an attorney and the lawyer's instruction to appellant not to say anything. In *Miranda v. Arizona,* 384 U.S. 436, 468, n.37 (1966), the Supreme Court of the United States stated that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation." Thus, appellant's argument is applicable only if his request to contact a lawyer occurred at a time when he was under police custodial interrogation.

Appellant's interrogation began on the afternoon of January 6, 1973. Athough appellant was not formally arrested until January 10, our Supreme Court has held that "[c]ustodial interrogation is not limited to police station questioning or that occurring after a formal arrest." *Commonwealth v. Jefferson,* 423 Pa. 541, 546, 226 A.2d 765 (1967). A "custodial interrogation" occurs, and "Miranda" warnings are thus required, "whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, . . ." *Commonwealth v. Feldman,* 432 Pa. 428, 432, 248 A. 2d 1, 3 (1968). In the present case, appellant was interrogated after a search warrant had been issued for his automobile and his car towed to a garage. It is clear that appellant was the focus of the police investigation. See *Commonwealth v. D'Nicuola,* 448 Pa. 54, 292 A. 2d 333 (1972). It is also clear that while at the police station,

appellant was "deprived of his freedom of action in [a] significant way", *Miranda,* supra, at 444, and thus was the subject of a custodial interrogation. *Commonwealth v. Marabel,* 445 Pa. 435, 283 A. 2d 285 (1971).

In *Commonwealth v. Haideman,* 449 Pa. 367, 370-371, 296 A. 2d 765 (1972), our Supreme Court held that "[t]estimonial reference to an accused's silence and his request for a lawyer at time of arrest is a constitutionally impermissible violation of the accused's Fifth Amendment right. . . . The difference between prosecutorial use of an accused's silence at *trial* and the use of an accused's silence at time of *arrest* is, as one court stated, 'infinitesimal.' *Gillison v. United States,* 399 F. 2d 586, 587 (D.C. Cir. 1968). In both instances, the defendant's silence is exploited as evidence of guilt. As the Fifth Circuit observed, '[w]e would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt.' *Walker v. United States,* 404 F. 2d 900, 903 (5th Cir. 1968)." See also *Commonwealth v. Stafford,* 450 Pa. 252, 299 A. 2d 590 (1973); *Commonwealth v. Jones,* 229 Pa. Superior Ct. 236, 327 A. 2d 638 (1974); *Commonwealth v. Greco,* 227 Pa. Superior Ct. 19, 323 A. 2d 132 (1974). The fact that appellant had not yet been formally placed under arrest is irrelevant. The police themselves recognized that appellant was in custody because they gave the warnings required by *Miranda. Miranda* notes that "[t]he prosecution may not, therefore, use at trial the fact that [the accused] stood mute or claimed his privilege in the face of accusation." 384 U.S. 436 at 468, n. 37. Thus, Officer Roberts's testimony impermissibly violated appellant's Fifth Amendment rights and thus constitutes reversible error.

In its brief, the Commonwealth advances two arguments in opposition to appellant's request for a new trial. First, the Commonwealth contends that the objectionable testimony was not prejudicial because Officer Roberts did

not state that appellant remained silent, but only that appellant's lawyer instructed him to remain silent. It is highly questionable whether a jury would consider an attorney's instruction any less indicative of guilt than the accused's own decision. Moreover, the argument overlooks the fact that Officer Roberts also commented on appellant's request to contact an attorney. Reference to this fact at trial is within the proscription of *Haideman.* Secondly, the Commonwealth states that defense counsel did not immediately move for a mistrial. The Commonwealth apparently is arguing that appellant has waived his objection to the admission of Officer Roberts's testimony. Defense counsel objected immediately because he felt that "what an attorney tells a client over the telephone is [not] proper evidence." After further testimony consumed two pages of the record, defense counsel moved for a mistrial. The following colloquy occurred at trial:

"[DEFENSE COUNSEL]: Judge, in the officer's direct testimony he stated that after they had been questioning Mr. Gochenaur in the Police Station that he asked to contact any attorney.

"THE COURT: He said after certain statements. I think the only thing he said, I don't know, and made no—the next response he said he wanted a lawyer and they stopped asking him questions.

"[DEFENSE COUNSEL]: He called an attorney and the attorney told him not to say anything. Now, Your Honor, there is a decision in the Supreme Court that can't be more than six months old, that kind of testimony requires a mis-trial because they are putting exercise of the Defendant's Fifth Amendment right in jeopardy, because if the jury hears about it— . . .

"THE COURT: I'll look at that case later, I am not going to hear what that is now. You could be quoting it out of context.

"You make a motion for a mistrial on the grounds that the Defendant—

"[DEFENSE COUNSEL]: Exercise of the Fifth Amendment—

"THE COURT: Overruled, exception noted."

It is clear that the defense attorney afforded the trial court an opportunity to correct its error. There was an immediate objection to the testimony; the fact that appellant's lawyer delayed a few minutes, until direct examination of the witness was complete, before requesting a mistrial, does not constitute a waiver.

Judgment of sentence on the charge of involuntary manslaughter is arrested. Judgment of sentence of failing to stop and render assistance is reversed, and a new trial ordered.