366 A.2d 1252

**COMMONWEALTH of Pennsylvania**

v.

**Bruce HINDS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 20, 1976.

Decided Dec. 15, 1976.

James M. Keller, Ellwood City, for appellant.

Joseph M. Stanichak, Asst. Dist. Atty., Beaver, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS: Judge.

Appellant, following a jury trial in May, 1975, was convicted of involuntary manslaughter,[1] failure to stop at the scene of an accident,[2] and failure to stop and render assistance.[3]

We must consider three issues raised by this appeal, the first of which is whether or not there was sufficient evidence to support the jury's guilty verdicts.[4]  We find that there was and affirm the lower court's refusal to arrest judgment.

The second question raised is whether the trial court committed reversible error by admitting the testimony of the arresting officer concerning the assertion, by appellant of his constitutional rights at the time of his arrest. We conclude that there was reversible error and therefore order a new trial.

In order to facilitate the new trial we must consider a third argument made by appellant, that certain physical evidence should have been suppressed on the basis that appellant's automobile was illegally stopped by the arresting officer, and that the search of the automobile following impoundment, was invalid.  We hold that the lower court properly refused to suppress the evidence.

I

In regards to the sufficiency of the evidence question, the following was offered as evidence at trial.  On December 19, 1974, shortly after 7:00 p. m., Mrs. Joanne Evans was fatally injured when she was struck by an au-

1.  Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 2504 (1973).

2.  Act of April 29, 1959, P.L. 58, § 1027, 75 P.S. § 1027(a) (1971).

3.  Act of April 29, 1959, P.L. 58, § 1027, 75 P.S. § 1027(b) (1971).

4.  Since our disposition of this case requires a new trial, we will not consider the portions of appellant's brief which allege trial errors, inasmuch as these issues may not arise in the new trial.

tomobile while she was walking along 12th Avenue in White Township, Beaver County. No eyewitnesses were produced.

Two Commonwealth witnesses, Mr. and Mrs. Murphy, testified that at about 7:00 p. m. on the evening of the 19th, while driving along a road leading to 12th Avenue, at a point one-half mile from where Mrs. Evans was struck, they had been passed on a blind curve by a dark blue or black Mercedes-Benz automobile of 1960 or 1961 vintage. Mr. Murphy estimated the speed of the passing vehicle to be about 45 miles per hour, which would have been 10 miles per hour above the posted limit on that section of the road. Mrs. Murphy testified that the driver of the Mercedes-Benz was a young man with shaggy hair of medium color. Appellant, a young man, owned an automobile fitting the description of the one that passed the Murphys.

After completing the pass, the Mercedes-Benz pulled away from the Murphy automobile, and went out of sight as it turned north on 12th Avenue. Mr. and Mrs. Murphy also turned north on 12th Avenue, but did not again catch sight of the Mercedes-Benz. After proceeding up 12th Avenue approximately two and one-half blocks, Mr. Murphy discovered the body of the deceased along the western, or left-hand berm of 12th Avenue between 28th and 29th Streets.

Mrs. Evans was pronounced dead on arrival at a Beaver Falls hospital to which she was rushed by ambulance. Death resulted from massive skull injuries.

Several Commonwealth witnesses testified that they saw Mrs. Evans walking in a northerly direction along the western berm of 12th Avenue shortly after 7:00 p. m. on the 19th of December. State Police Trooper Gary Kuffer, the investigating officer who arrived at the scene some thirty minutes after Mrs. Evans was struck, testified that there was an 85 foot trail of blood extending along the western berm to the point where the vic-

tim's body was found. Trooper Kuffer also discovered a parking light lens along the western edge of the road at approximately the point where the blood trail began.

The circumstances which led to appellant's arrest are discussed *infra*, inasmuch as they are the basis for one of appellant's assertions of error. In any event, appellant was arrested less than two hours after Mrs. Evans was struck, after it was discovered that his automobile, a black 1961 Mercedes-Benz, was damaged in the left-front fender and headlight area. At the time of his arrest, appellant volunteered to the arresting officer that appellant's girlfriend had telephoned him to say that he might have been involved in a hit-and-run accident near Beaver Falls, and that appellant, when arrested, was on his way to a State Police Barracks to find out what had happened.

An expert witness called by the Commonwealth testified concerning the physical evidence taken in a search of the exterior of appellant's automobile. He testified that certain fibers taken from the headlight area were identical to fibers taken from the coat the victim was wearing at the time of her death. In addition, the left-front parking light assembly was missing from appellant's vehicle, and the forensic chemist testified that the lens found at the scene was of a chemical composition identical to the lens which remained in the right-hand light assembly of appellant's vehicle. He also testified that the lens found at the scene was a good fit for the right-hand light assembly of appellant's automobile but that it did not fit well in the left-hand assembly due to the damaged condition of that side of the vehicle.

Commonwealth exhibits showed that the section of 12th Avenue in question is a straight, fairly flat, two-lane road in a residential area. One can see for several hundred feet in either direction from the point where Mrs. Evans was found.

The appellant, who lives slightly more than one mile from the scene, testified that on the evening of the 19th

he had driven north on 12th Avenue at about the time Mrs. Evans was killed. Appellant also testified that to his knowledge, he did not hit anything or anybody, and that he did not stray from the right-hand side of the road as he proceeded up 12th Avenue that night. He did testify, however, that his vision had been obscured for a second or two after a passing car had splashed water and slush on his windshield, as he was proceeding in the area of 28th Street. Appellant could not explain how the left-front portion of his automobile had been damaged.

Appellant's contention that his conviction is not supported by sufficient evidence must be reviewed according to a well-established standard: "In determining whether evidence is sufficient to sustain a conviction, all the evidence must be regarded in the light most favorable to the Commonwealth, and the Commonwealth must be given the benefit of all reasonable inferences arising from it." *Commonwealth v. Keysock,* 236 Pa.Super. 474, 483, 345 A.2d 767, 772 (1975) (citations omitted).

In so viewing the evidence produced in this case, we believe that it was sufficient to permit the jury to reasonably infer that appellant struck Mrs. Evans while operating his automobile in a "reckless or grossly negligent manner." [5]

The jury heard testimony that would justify the conclusion that appellant had been driving in excess of the speed limit and had committed a dangerous pass less than one-half mile from the scene of the accident. While the manner in which a vehicle was being operated at a point slightly removed in both time and distance from the scene of an accident is generally not relevant to show

---

[5]. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 2504(a) (1973), provides: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

*speed* at the time of the accident, when recklessness is at issue, such evidence is probative of the *state of mind* of the driver at the time of the accident, because "a state of mind which demonstrates 'a marked disregard for the safety of others' is not likely to change significantly in a matter of seconds. . . ." *Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 271, 323 A.2d 775, 778, *allocatur refused*, 227 Pa.Super. *xxv* (1974) (citations omitted).

Although the evidence did not include an eyewitness account of the incident, the Commonwealth produced a large amount of circumstantial evidence such as the location of the body and bloodstains, the presence of the parking light assembly on the western edge of the road, testimony from several witnesses to the effect that Mrs. Evans was walking along the western berm moments before the accident occurred, and finally, the testimony of the forensic chemist linking the damage to appellant's vehicle with the accident scene. Certainly, this evidence was sufficient to support a conclusion by the jury that appellant was driving on the wrong side of the road and that the left front portion of his automobile struck Mrs. Evans.

■ It is well-settled that "not every violation of law or unlawful act in the operation of a motor vehicle will render an operator *criminally* liable for deaths which may result. . . ." *Commonwealth v. Greer*, 232 Pa.Super. 448, 450, 335 A.2d 770, 772 (1975) (citations omitted). Nevertheless, some violations of motor vehicle laws are inherently more dangerous than others, and in *Commonwealth v. Smoker*, 204 Pa.Super. 265, 203 A.2d 358, *allocatur refused*, 204 Pa.Super. *xxxvii* (1964), the court held that evidence indicating that the accused had driven his car on the wrong side of the road, absent some explanation by the accused, was sufficient to support an inference of reckless conduct.

■ Inasmuch as there is seldom direct evidence of the mental state of a given defendant, it is within the

province of the jury to infer from the circumstances that a driver was acting recklessly or in a grossly negligent manner. *Commonwealth v. Keysock,* supra. In reviewing all of the evidence produced in this case, including the fact that the accident occurred in a residential area, we find that the jury could reasonably have made that inference with respect to appellant, and we must therefore conclude that there is sufficient evidence to support the guilty verdicts.

## II

■ Appellant argues that the trial court committed reversible error by admitting testimony of the investigating officer concerning statements made by appellant shortly after his arrest. Trooper Kuffer testified, over objection, that while appellant was at the New Castle State Police Barracks, after he had been advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), appellant made the following statement:

"I don't want to say anything until I talk to my attorney, but I will say this: I passed a car, and, when I did, the car splashed my windshield. I didn't see anything. I didn't see the girl. I didn't know that I hit her. I did stop and look."

There is no disagreement concerning the admissibility of the bulk of this statement, since appellant had at least partially waived his right to remain silent by voluntarily making the statement. However, appellant contends, and we must agree, that the admission of the initial portion of the statement in which appellant asserted his constitutional right to counsel and his right to remain silent, was prejudicial and requires that appellant be afforded a new trial.

This matter is directly controlled by *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976).[6] In prohibit-

6. Affirming *Commonwealth v. Greco,* 227 Pa.Super. 19, 323 A.2d 132 (1974).

ing any testimonial reference to an accused's exercise of his constitutional rights, the Court reasoned that to allow such reference would constitute a penalty for the exercise of one's constitutional rights, inasmuch as "most lay persons would view an assertion of the constitutional privilege as an admission of guilt." *Id.* at 404, 350 A.2d at 828.

The lower court's opinion expresses the view that since appellant made a brief voluntary statement following the assertion of his constitutional rights, he had waived those rights, and that this somehow nullified the prejudicial effect created by reference to his initial assertion. We cannot agree. We said in *Commonwealth v. Greco,* 227 Pa.Super. 19, 323 A.2d 132 (1974), that since *Miranda v. Arizona,* supra, provided an accused could waive his rights but then subsequently reinvoke them, or waive them with respect to one area but not another, the fact that a defendant had made a voluntary statement to the police would not change our holding that testimonial reference to an accused's assertion of his rights, whether made at the time of his arrest or at some later time, is prejudicial and requires that a new trial be granted. We, therefore, reverse the lower court's holding on this matter and grant a new trial.

## III

Appellant asserts as additional error the lower court's refusal to suppress certain physical evidence obtained as a result of an examination of the exterior of appellant's automobile on the day following appellant's arrest and impoundment of the vehicle. Appellant would have us suppress the evidence on the basis that the initial stop of his automobile was illegal, thus rendering evidence obtained as a result of that stop inadmissible, or, alternatively, that the warrant pursuant to which the vehicle's exterior was searched contained certain fatal de-

192

fects. We conclude that both of these arguments must fail and that the court below properly refused to suppress the evidence.

The circumstances which led to the initial stop of appellant's vehicle are as follows: Mr. Murphy, who discovered Mrs. Evans' body, told Trooper Kuffer, the investigating officer, that a dark 1960 or 1961 Mercedes-Benz had passed him at a high rate of speed and had turned north on 12th Avenue only moments before Mr. Murphy came upon the body. Trooper Kuffer put this information in a police radio broadcast, whereupon a local deputy sheriff, having heard the broadcast, notified the State Police that appellant lived near the scene of the accident and was the owner of an automobile fitting the description which had been broadcast.

In view of the fact that, by appellant's own admission, a 1961 Mercedes-Benz is not a particularly common automobile, the local police decided to investigate. They drove to appellant's residence, but did not see appellant or his automobile. They then proceeded to the home of appellant's girlfriend, where they were told that appellant had been there, but had left to go to his job at the New Castle Holiday Inn, some twenty miles away.

Armed with this information, Trooper Kuffer notified the New Castle State Police, and requested that they check out a Mercedes-Benz registered to appellant, to determine if it had sustained damage to the left-front fender area, inasmuch as this vehicle might have been involved in a hit-and-run in Beaver County. The New Castle State Police were given appellant's license number and told that the vehicle might be parked at the nearby Holiday Inn.

Corporal Roseck was sent to investigate, and as he prepared to leave the State Police Barracks, he saw a black Mercedes-Benz bearing appellant's license number proceeding east, away from the Holiday Inn. Corporal Roseck pursued appellant's vehicle and subsequently

stopped it. All of this took place less than two hours after Mrs. Evans was struck.

Appellant does not dispute the fact that information obtained by Corporal Roseck after appellant had been stopped gave rise to adequate probable cause to arrest. We will focus then, on whether or not the initial stop of appellant's car was proper.

Recent decisions of this court and of our Supreme Court have established that the rule permitting an investigatory stop on less than the probable cause needed to arrest, as established in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), is applicable to stops of persons riding in automobiles, as well as to pedestrians who are briefly detained for investigation. *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975); *Commonwealth v. Ferraro*, 237 Pa.Super. 268, 352 A.2d 548 (1975); *Commonwealth v. Nastari*, 232 Pa.Super. 405, 335 A.2d 468, *allocatur refused*, 232 Pa.Super. *xxx* (1975).

The facts known to Trooper Kuffer, which we have heretofore recited, and upon which he based his message to the New Castle State Police Barracks, clearly constituted a sufficient basis for Corporal Roseck to briefly detain the appellant to determine whether or not appellant's automobile was damaged in the area of the left-front fender. Had he failed to do so, Corporal Roseck would have been derelict in his duty.

Appellants urge upon us the additional argument that the evidence seized in the search of the exterior of appellant's vehicle should be suppressed because of alleged defects in the warrant pursuant to which the search was made on the day following appellant's arrest and the impoundment of his automobile.

We agree with the lower court that there is no need to consider the validity of the search warrant, since the United States Supreme Court held on similar facts, in

*Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed. 2d 325 (1974), that the police were justified in making a *warrantless* search, based on probable cause, of the *exterior* of the impounded vehicle. As in the case at bar, the search in *Cardwell v. Lewis,* supra, was conducted on the day after the arrest and impoundment. We upheld a warrantless search of the exterior of a defendant's automobile when based on probable cause, under circumstances similar to the case at bar, in *Commonwealth v. Maione,* 227 Pa.Super. 239, 324 A.2d 556, *allocatur refused,* 227 Pa.Super. *xxv* (1974). Since the search in the present case was obviously supported by probable cause, it could have been conducted with no warrant at all. We therefore find it unnecessary to consider the validity of the warrant which was obtained.

We have concluded that there was sufficient evidence to support the jury's verdicts, and that the lower court properly refused to suppress physical evidence obtained from the exterior of appellant's automobile. However, since we also conclude that testimonial reference to appellant's assertion of his constitutional rights was improperly admitted, a new trial is required.

Judgment of sentence reversed and a new trial granted.

CERCONE, J., files a concurring opinion.

VAN der VOORT, J., dissents.

CERCONE, Judge (concurring):

I join the majority opinion, but I wish to add that the question of whether the reference to appellant's request for counsel was harmless beyond a reasonable doubt was not raised. Since the Commonwealth has the burden of persuasion with respect to harmless constitutional error under *Chapman v. California,* 386 U.S. 18, 23–24, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), I conclude that, in failing to raise that issue, the Commonwealth has waived it.