381 A.2d 944

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph N. TRAINOR, Sr.**

Superior Court of Pennsylvania.

Argued March 16, 1977.

Decided Dec. 28, 1977.

---

6. *See* Philadelphia Local Rule 3129*, cited in the majority opinion's footnote 12.

Sheryl Ann Dorney, Assistant District Attorney, with her Donald L. Reihart, District Attorney, York, for Commonwealth, appellant.

Thompson J. McCullough, Assistant Public Defender, York, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal by the Commonwealth from an order of the court below sustaining a demurrer[1] to a charge of involuntary manslaughter arising from a fatal motor vehicle accident on Route 74 in York County.

In reviewing a lower court order sustaining a demurrer "the test to be applied by us is whether the evidence of record and the inferences reasonably drawn therefrom would support a guilty verdict, and in making our determination we must read the evidence in the light most favorable to the Commonwealth." *Commonwealth v. Bey*, 221 Pa.Super. 405, 406, 292 A.2d 519, 520 (1976). So viewed, the record discloses the following.

At the scene of the accident Route 74 is a two-lane highway eighteen feet seven inches wide. One Lorne Seifert was proceeding north on Route 74, operating a dump truck towing a lowboy trailer on which a backhoe was

---

1. It is well settled that the Commonwealth may appeal such an order. *Commonwealth v. Long*, 467 Pa. 98, 354 A.2d 569 (1976); *Commonwealth v. Bey*, 221 Pa.Super. 405, 292 A.2d 519 (1972).

loaded. Seifert's vehicles were approximately eight to nine feet wide, and a combined length of over thirty feet. As he approached the intersection of Route 74 and Barrens Church Road, Seifert observed the appellee, Joseph Trainor, Sr., driving a large van type truck in the opposite direction. Near the intersection the two vehicles sideswiped, after which appellee's truck catapulted some forty feet and landed on an automobile to the rear of Seifert's dump truck-lowboy trailer, causing the death of two occupants of the automobile.

Seifert testified that, prior to the sideswipe, appellee's vehicle was moving "pretty fast." Seifert's girlfriend, who was riding with him, stated that appellee was going "faster than the speed limit" of 45 miles per hour for trucks. The investigating officer, State Trooper Raymond Mitchell, estimated the speed of Seifert's truck and trailer to be in the vicinity of 35 to 45 miles per hour after the sideswipe. Trooper Mitchell did not testify directly as to the speed of appellee's truck. However, on cross-examination, it was revealed that at the preliminary hearing Trooper Mitchell testified that he had calculated that, after the sideswipe, appellee's truck was traveling only at the speed of 32.7 miles per hour. Most significantly, there was no other testimony as to appellee's speed either before or after the collision with Seifert's vehicle.

Seifert and his passenger further testified that, prior to the sideswipe, they observed appellee looking off to his right toward a field and the intersecting Barrens Church Road while his truck "just kept coming over" into Seifert's lane. Despite Seifert's efforts to hug the extreme right of the berm, the left sides of the two vehicles collided. Trooper Mitchell testified that his investigation disclosed that there were four points of impact between the two vehicles during the course of the sideswipe. The trooper substantiated Seifert's testimony that the sideswipe occurred in Seifert's lane while the Seifert vehicles were hugging the right berm. Mitchell further concluded that on the fourth and final impact appellee's truck hit the rear portion of the lowboy

trailer whereupon the front wheels of the truck were sheared off causing it to take flight and land some forty feet later on top of the ill-fated automobile proceeding behind Seifert.

Finally, Trooper Mitchell testified that neither appellee's operator license nor his renewal application indicated that appellee was handicapped, when he in fact has only one arm. Appellee's employer, however, testified that he satisfied himself that appellee could operate a truck with one arm before employing him.

The crime of involuntary manslaughter is defined in Section 2504 of the Crimes Code:[2]

"A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

In addition, the Crimes Code specifies the meanings to be given the words "recklessly" and "negligently" and equivalent terms.[3] It is to be noted that the Crimes Code definition of involuntary manslaughter is substantially the same as that found in the old Penal Code and prior case law. See

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 2504 (1973).

3. "Recklessly" is defined in 18 Pa.C.S. § 302(b)(3):
"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." "Negligently" is defined in 18 Pa.C.S. § 302(b)(4):
"A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."

Act of June 24, 1939, P.L. 872, § 703, 18 Pa.C.S.App. § 4703 (1973); see also *Commonwealth v. Plimeni,* 474 Pa. 430, 378 A.2d 1189 (1977). Accordingly, we continue to adhere to the principle that "not every violation of law or unlawful act in the operation of a motor vehicle will render an operator *criminally* liable for deaths which may result."[4] *Commonwealth v. Greer,* 232 Pa.Super. 448, 450, 335 A.2d 770, 772 (1975). *Accord, Commonwealth v. Hinds,* 244 Pa.Super. 182, 366 A.2d 1252 (1976); *Commonwealth v. Keysock,* 236 Pa.Super. 474, 345 A.2d 767 (1975). Thus, "to sustain a conviction of involuntary manslaughter for a death resulting from an act which constitutes a transgression of the Motor Vehicle Code, it must be established that such violation in itself, or together with the surrounding circumstances, 'evidence a disregard of human life or an indifference to consequences.'" *Commonwealth v. Busler,* 445 Pa. 359, 361, 284 A.2d 783, 784 (1971); *Commonwealth v. Keysock, supra; Commonwealth v. Greer, supra.*

■ Instantly, the Commonwealth argues that the evidence relative to the speed of appellee's truck and as to his encroachment on the wrong side of the highway, satisfies the "reckless or grossly negligent" test of Section 2504. In other words, the Commonwealth contends that appellee's conduct "evidence[d] a disregard of human life or an indifference to consequences." *Commonwealth v. Busler, supra.* We are not so persuaded.

As previously indicated, the testimony as to appellee's speed, even if competent, was inconclusive. Seifert merely testified that appellee's truck was going "pretty fast." Seifert's passenger, however, stated that appellee was going

---

4. Parenthetically, we note that the vitality of this principle is cast in doubt as a result of the recently enacted Vehicle Code. Act of June 17, 1976, No. 81, § 1, eff. July 1, 1977, 75 Pa.C.S. § 101 et seq. Section 3732 of the new act provides:

"Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death."

"faster than the speed limit." On the other hand, the investigating officer estimated appellee's speed to be within the statutory limit. However, the Commonwealth, citing *Commonwealth v. Smoker*, 204 Pa.Super. 265, 203 A.2d 358, *allocatur refused*, 204 Pa.Super. XXXVII (1964), contends that the unrefuted evidence of appellee's encroachment on Seifert's lane of travel alone was sufficient to justify a finding of recklessness or gross negligence. In *Smoker* we held that "[t]he mere fact that [defendant] drove on the wrong side of the road, without any visible reason or compulsion to do so, would warrant the jury in inferring that he did so negligently and, particularly in view of the great danger involved in such conduct under the circumstances, that he did so recklessly." *Id.* 204 Pa.Super. at 268–69, 203 A.2d at 360. We, however, agree with the court below that *Smoker* is distinguishable from the instant case. In *Smoker* the evidence clearly established that the defendant had driven his vehicle on the wrong side of the road resulting in a head-on collision. Instantly, as previously noted, the impact between appellee's truck and Seifert's large combination of vehicles was a sideswipe, as opposed to a head-on collision, occurring on a relatively narrow highway. Furthermore, the facts in *Smoker* indicate that the jury would have been warranted in inferring the defendant's recklessness or gross negligence by reason of evidence indicating that the defendant had fallen asleep at the wheel after driving a long period of time. In the instant case appellee's lesser encroachment on the opposite lane of travel was the product of brief inattention to the road ahead; certainly, there was no evidence of continuous erratic driving. Although the evidence indicates that appellee failed to exercise the proper amount of caution prior to the accident, it does not permit an inference that he was acting recklessly or in a grossly negligent manner. *Commonwealth v. Greer*, supra.

Order affirmed.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

Once again I find it necessary to disagree with the majority's concept of involuntary manslaughter. *Commonwealth v. Greer*, 232 Pa.Super. 448, 335 A.2d 770 (1975); *Commonwealth v. Sisca*, 245 Pa.Super. 125, 369 A.2d 325 (1976).

The standard to be applied in ruling upon a demurrer is whether the evidence is sufficient to warrant the jury in finding the defendant guilty beyond a reasonable doubt. *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973); *Commonwealth v. Gladden*, 226 Pa.Super. 13, 311 A.2d 711 (1973); *Commonwealth v. Rodgers*, 235 Pa.Super. 106, 340 A.2d 550 (1975). Inferences reasonably drawn from the evidence of record which would support a guilt verdict are to be given effect. *Commonwealth v. Collins*, 436 Pa. 114, 259 A.2d 160 (1969); *Commonwealth v. Dennis*, 211 Pa.Super. 37, 234 A.2d 53 (1967). The evidence *must* be read in the light most favorable to the Commonwealth's case. *Commonwealth v. Zeringo*, 214 Pa.Super. 300, 257 A.2d 692 (1969); *see Commonwealth v. Bey*, 221 Pa.Super. 405, 292 A.2d 519 (1972).

I believe the evidence, so viewed, could produce a stronger case for the Commonwealth than that stated by the majority, but even as stated by the majority I believe it clearly would support a guilty verdict by proof beyond a reasonable doubt.

It is certainly the present law in Pennsylvania that not every violation of law or unlawful act in the operation of a motor vehicle will render the operator criminally responsible for deaths which may result. Such an operator, to be criminally responsible, must evidence a disregard of human life or an indifference to the consequences of his act. This is based on the sound reason that there must be found from the evidence some degree of culpable behavior or reckless disregard for the safety of others before a conviction may be sustained.

Where, as here, the present record supports, at a minimum, evidence of a speed exceeding the posted limits, gross

inattention to the road and traffic and a blatant concealment of a regrettable, but nonetheless extremely relevant, handicap, the loss of one arm. It defies reason to affirm the granting of this demurrer.

The husband and wife who were killed were completely innocent and unsuspecting members of the public who had every right and expectation to believe that the law of this Commonwealth protected them and other members of the public against death and serious bodily injury while traveling upon our highways. It will come as a shock to the public when, on some future day, it realizes that our courts are not so diligent in extending this protection. And a civil remedy to the next-of-kin will not abate this shock.

The additional shocker in this realization will be that, under the majority view, a driver such as appellee is not even subject to judgment by a fact finder as to his conduct and can be, and under the majority view is, discharged as a matter of law.

To my view there is no question that the evidence here presented by the Commonwealth would support a verdict of guilty to the crime of involuntary manslaughter since it would display a departure from prudent conduct constituting a reckless disregard of human life or indifference to consequences. The view of the majority will, I fear, result in a great injustice principally to those trusting members of the public who, like the decedents in this tragic occurrence, rely upon the enforcement of the law for partial protection upon our highways. The view of the majority will, I fear, further encourage reckless disregard of human life and indifference to consequences in the operation of motor vehicles. The great American romance with the automobile must not be permitted to overcome a common sense realization of the obligations that must be assumed in the operation of a motor vehicle. With the deplorable carnage witnessed daily on our highways we can ill afford to encourage such conduct.

I would reverse the granting of the demurrer and remand the case to trial.