450 A.2d 29

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Shirley SETSODI.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed Aug. 27, 1982.

Daniel G. Spengler, Assistant District Attorney, Easton, for Commonwealth, appellant.

James C. Hogan, Easton, submitted a brief on behalf of appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

On September 3, 1979 a criminal complaint was filed against appellee, Shirley M. Setsodi, charging her with homicide by vehicle, 75 Pa. C.S.A. Section 3732. A summary citation was also filed charging her with failure to yield the right of way when making a left turn, 75 Pa. C.S.A. Section 3322. On September 5, 1979, an additional complaint was filed against appellee charging her with involuntary manslaughter, 18 Pa. C.S.A. Section 2504. After a full preliminary hearing on September 19, 1979, the district magistrate found a prima facie case on all charges.

On February 6, 1980, appellee filed a petition alleging that the Commonwealth had failed to establish a prima facie case in light of *Commonwealth v. Barone,* 276 Pa.Super. 282, 419 A.2d 457 (1980). By agreement of both the Commonwealth and the defendant, Judge Freedberg of the Court of Common Pleas of Northampton County, relied on the transcript of the testimony from the district magistrate's preliminary hearing. On June 9, 1980, Judge Freedberg issued an order dismissing the misdemeanor charges of involuntary manslaughter and homicide by vehicle and remanding the summary offense to the district magistrate. The Commonwealth has appealed the order of June 9, 1980.

Viewing the evidence presented at the preliminary hearing in the light most favorable to the Commonwealth,[1] on September 1, 1979 at approximately 3:45 p.m., the appellee was operating her vehicle in a northerly direction on Pennsylvania Route 611 on Upper Mount Bethel Township in Northampton County. Route 611 is a two-lane road running in a north-south direction. The weather was sunny and the

1. *Commonwealth ex rel. Scolio v. Hess,* 149 Pa.Super. 371, 27 A.2d 705 (1942); *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978).

road surface was dry. As appellee approached the driveway of her daughter's home, which abuts Route 611 on the west, she activated her left turn signal, applied the brakes, slowed and turned left. Her vehicle was struck on the passenger side while in the southbound lane by a motorcycle heading south on Route 611. The cyclist had his headlights turned on. The cyclist, Bryan Gillner, was unable to avoid the collision and died as a result of injuries sustained.

The General Assembly has defined homicide by vehicle as follows:

"Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death." 75 Pa. C.S.A. Section 3732.

The lower court relied on *Commonwealth v. Barone,* supra, in concluding the Commonwealth had failure to establish a prima facie case of homicide by vehicle. *Barone,* supra, has, in effect, been reversed by *Commonwealth v. Field,* 490 Pa. 519, 417 A.2d 160 (1980), and the decision of this Court, sitting *en banc,* in *Commonwealth v. Koch,* 297 Pa.Super. 350, 443 A.2d 1157 (1982).

As a result of these decisions, the elements of the crime of homicide by vehicle have been summarized as follows:

"(1) Defendant deviated from the standard of care established by the underlying vehicle code provision [or municipal ordinance].

(a) Defendant knew, or should have known, he engaged in the conduct claimed to be in violation of the underlying Vehicle Code provision [or municipal ordinance].

(2) A death occurred.

(b) The death was, at the very least, a probable consequence of the defendant's violation of the underlying Vehicle Code provision [or municipal ordinance]." *Koch,* supra, 297 Pa.Superior Ct. at 356, 443 A.2d at 1160.

■ Our review of the record indicates that the Commonwealth has established a prima facie case, as found by the lower court, concerning the summary offense of failure to yield the right of way when making a left turn.[2]

■ Although homicide by vehicle is not a strict liability crime, "The culpability required by Section 3732 does not fall into one of the categories defined in 18 Pa. C.S. Section 302 (intentionally, knowingly, recklessly or negligently). It is lesser than criminal negligence, 18 Pa. C.S. Section 302(b)(4), which involves a gross deviation from the standard of care of a reasonable person would observe in the actor's situation. Proof of criminal negligence or recklessness, 18 Pa. C.S. Section 302(b)(3), is required in order to convict defendant of involuntary manslaughter, 18 Pa. C.S. Section 2504." *Koch,* supra, 297 Pa.Super. at 356, 443 A.2d at 1160.

In *Commonwealth v. Houtz,* 496 Pa. 345, 348, 437 A.2d 385, 387 (1981), our Supreme Court has further explained the relationship between the crimes of homicide by vehicle and involuntary manslaughter as follows:

"This legislative 'expansion' was accomplished not by the elimination of any of the elements of the crime of involuntary manslaughter, but by a relaxation of the degree of proof of two existing elements: culpable conduct and causation. The crime of involuntary manslaughter, as charged here, requires proof that the actor engaged in the Vehicle Code violation in a 'reckless or grossly negligent manner,' and that the death was caused 'as a direct result.' 18 Pa. C.S. Section 2504. See *Commonwealth v. Clowser,* 212 Pa.Super. 208, 239 A.2d 870 (1968). By contrast, under the crime of homicide by vehicle, it

2. "The driver of the vehicle intending to turn left within an intersection or into an alley way, private road or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard." 75 Pa. C.S.A. Section 3322.

It has already been established that it is not necessary for a defendant to be charged with a specific violation of the Vehicle Code as a necessary element of homicide by vehicle. *Commonwealth v. Wilkinson,* 278 Pa.Super. 490, 496, 420 A.2d 647, 650 (1980); *Koch,* supra 297 Pa.Super. at 356, 443 A.2d at 1161.

must be shown only that the actor 'knew or should have known,' that he engaged in the conduct claimed to be in violation of the Vehicle Code, and that, at the very least, death was a 'probable consequence' of the conduct. *Commonwealth v. Field,* 490 Pa. at 525, 417 A.2d at 163. These relaxed degrees of culpable conduct and causation set forth in the crime of homicide by vehicle are necessarily established by proof of more strigent counterparts contained in the crime of involuntary manslaughter." *Koch,* supra, 297 Pa.Super. at 357, 443 A.2d at 1160–61.

■ On the basis of the above, there can be no doubt that the Commonwealth has established a prima facie case of homicide by vehicle against appellee.

The testimony established that appellee made a left turn into a private driveway. While in the opposite lane of traffic, appellee's vehicle was struck by a motorcycle operated by the deceased victim. The cyclist was unable to stop or otherwise avoid the collision because he was too close when appellee made the turn. Thus, appellee created a hazard by failing to yield the right of way to approaching traffic when making a left turn. The testimony at a preliminary hearing also established that Mrs. Grace Palmer, the operator of the vehicle behind appellee, saw the approaching motorcycle. Two other witnesses in the immediate area also saw the motorcycle with its headlights on.

Mrs. Palmer testified as follows:

"A.  No.  I wouldn't say she was going very, very fast, but she was just making her turn and her face was—she was facing her—the house, not the road.  I mean her eyes were not on the road or it was on where she was going.

Q.  Looking into the driveway where she was turning?

A.  Right, right, and the motorcycle was right there with his lights on.

Q.  Let me ask you:  how fast was the motorcycle coming?

A.  Well, I don't know.  I don't know that.  I don't know.

Q. Well, when did you first see the motorcycle, before or after Mrs. Setsodi began to make her left-hand turn?

A. Oh, I saw him before that. I saw him coming.

Q. I see. How far away—

A. That's why I thought she was going to stop.

Q. How far away from you was the motorcycle when you first saw it?

A. I don't know.

Q. How far was the motorcycle from the Setsodi automobile when you first saw him?

A. Well, I would say that when she was making her left turn, he couldn't have been more than a car or two lengths away."

From this testimony, as well as the other testimony from the preliminary hearing, it is clear that appellee knew or should have known that she engaged in the conduct claimed to be in violation of 75 Pa. C.S.A. Section 3322; and that death was, at the very least, a probable consequence of her violation of this Section of the Vehicle Code.

The lower court's dismissal of the involuntary manslaughter charge poses more of a problem, since we consider this case to be borderline. The lower court concluded, "That defendant's conduct, in the instant case, amounts to nothing more than ordinary negligence." The lower court relied upon *Commonwealth v. Trainor*, 252 Pa.Super. 332, 338, 381 A.2d 944, 947 (1977). In that case, "brief inattention" caused the driver of a truck to cross the center line and sideswipe another vehicle.

■ We disagree, we find that appellee's conduct may constitute criminal negligence or recklessness, as defined by 18 Pa. C.S.A. Section 302(b)(3), for the purposes of establishing a prima facie case of involuntary manslaughter. We find that *Trainor*, supra, is inapposite, since that case involved "brief inattention" and a sideswipe. The collision in the instant case is more analogous to a head-on collision as in *Commonwealth v. Smoker*, 204 Pa.Super. 265, 268–9, 203

A.2d 358, 360 (1964), where this Court held that driving a vehicle in the wrong lane due to inattention was sufficient to establish recklessness. See also *Commonwealth v. Rosov,* 262 Pa.Super. 121, 396 A.2d 675, 676 (1978); *Commonwealth v. Amecca,* 160 Pa.Super. 257, 50 A.2d 725 (1947), in which conviction was affirmed where the accused turned into the opposite lane to avoid rough pavement and struck an oncoming motorcycle. We stated, "It was reckless for the defendant not to observe the approaching traffic . . . .", 160 Pa.Superior Ct. at 260, 50 A.2d at 727.

Order affirmed in part and reversed in part and case remanded to the jurisdiction of the lower court for further proceedings consistent with this Opinion.