J-A19036-21

2021 PA Super 198

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORGE FRETTS | : | No. 62 EDA 2021 |

Appeal from the Order Entered December 3, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002763-2019

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                              **FILED OCTOBER 4, 2021**

The Commonwealth appeals from an order entered in the Court of Common Pleas of Philadelphia County (trial court) granting the pretrial motion of defendant Jorge Fretts (Fretts) to quash a charge of homicide by vehicle. For the reasons set forth below, we affirm.

This case arises out of a fatal collision between a garbage truck and a bicyclist that occurred on November 28, 2017 at the intersection of Spruce Street and 11th Street in Philadelphia when the garbage truck was making a right turn and the bicyclist was traveling straight. The intersection where the accident occurred is regulated by a traffic light and both the garbage truck and the bicyclist were proceeding into the intersection when the light was green. Commonwealth Ex. 2; Commonwealth Ex. 3. The garbage truck was

_____

[*] Retired Senior Judge assigned to the Superior Court.

not at the intersection when the light turned green; it was behind a car that was stopped at the intersection waiting for the light to change. Commonwealth Ex. 2; Commonwealth Ex. 3. Fretts was driving the garbage truck and remained at the scene after the accident. N.T. Preliminary Hearing at 14-15. The police at the scene did not issue any traffic citations. *Id.* at 19. On February 26, 2019, the Commonwealth charged Fretts with homicide by vehicle, involuntary manslaughter, and reckless endangerment.[1]

A preliminary hearing was held on April 17, 2019, at which the Commonwealth presented testimony by a police officer who came to the scene after the accident, the medical examiner's report showing that the accident caused the bicyclist's death, a photograph of the block of Spruce Street on which the garbage truck and bicyclist traveled before reaching the intersection where the accident occurred, and two video recordings, one, marked as Commonwealth Ex. 2, from a camera on 11th Street pointed south toward the intersection and the other, marked as Commonwealth Ex. 3, from the garbage truck.

The video from the 11th Street camera shows that the bicyclist was next to the passenger side door of the garbage truck when the accident happened and that, because of the height of the garbage truck, she was below the

---

[1] 75 Pa.C.S. § 3732(a), 18 Pa.C.S. § 2504(a), and 18 Pa.C.S. § 2705, respectively.

passenger side window. Commonwealth Ex. 2. This video does not show any flashing turn signal on the garbage truck. *Id.*

The video from the garbage truck includes video of the inside of the garbage truck cab, a view of the street on the left side of the garbage truck, and a recording of the truck's speed. Commonwealth Ex. 3. The video of the interior of the garbage truck cab shows Fretts looking to the right before and while making his turn. *Id.* The bicyclist is not visible in this video when the truck reaches the intersection and Fretts makes the turn. *Id.* The video of the interior of the garbage truck shows Fretts looking at some papers when the truck is stopped, but he is looking at the road and not the papers as the truck moves toward the intersection and before and while he makes the turn. *Id.* The video also shows that Fretts had an earbud in his right ear, but that his left ear was not obstructed, and that he was driving the truck with one hand on the steering wheel. *Id.*

The video of the street on the left side of the garbage truck does not show what was to the right of the garbage truck and does not show the bicyclist at all. Commonwealth Ex. 3. The recording of the garbage truck's speed shows that the truck was traveling approximately 5 miles per hour before and during the turn. *Id.*

The photograph of Spruce Street shows that it has a bicycle lane on the right-hand side and that there is a sign that reads "BEGIN RIGHT TURN LANE" and "YIELD TO BIKES." Commonwealth Ex. 4. The police officer testified

that this sign is approximately 125 feet before the 11th Street intersection. N.T. Preliminary Hearing at 8, 10-11. The police officer testified that the garbage truck was in the proper lane for making its right turn, but that it appeared from the 11th Street video that its turn signal was not on. *Id.* at 13, 20.

The Commonwealth marked the two videos as exhibits at the preliminary hearing and played them, but did not have them admitted in evidence. N.T. Preliminary Hearing at 5-6, 12-16. At the end of the preliminary hearing, the municipal court judge ruled that the Commonwealth had presented a *prima facie* case as to the three charges of homicide by vehicle, involuntary manslaughter, and reckless endangerment. *Id.* at 43-44.

On July 17, 2019, Fretts filed a pretrial Motion to Quash Return of Transcript and/or Petition for Habeas Corpus (motion to quash) asserting that the Commonwealth failed to make out a *prima facie* case at the preliminary hearing and seeking dismissal of all of the charges. On August 14, 2019, the trial court held a hearing on the motion to quash at which the Commonwealth presented no additional evidence and did not show the videos or provide them to the trial court. N.T., 8/14/19, at 5-16. At the end of this hearing, the trial court granted the motion to quash and dismissed all the charges. *Id.* at 16-17. The Commonwealth filed a notice of appeal on August 22, 2019, and subsequently submitted the two videos to the trial court on August 30, 2019. Trial Court Opinion, 10/2/19, at 1-2. On August 14, 2020, this Court reversed

the order dismissing the charges and remanded the case for the trial court to hold a new hearing on the motion to quash that included consideration of the videos. ***Commonwealth v. Fretts***, 2443 EDA 2019, slip op. at 7-8 (Pa. Super. August 14, 2020) (unpublished memorandum).

On December 2, 2020, the trial court held a hearing on the motion to quash at which both videos were played and admitted in evidence. N.T., 12/2/20, at 5-16. On December 3, 2020, the trial court, after considering this evidence, entered an order granting the motion to quash as to the charge of homicide by vehicle on the ground that the Commonwealth's evidence was insufficient to show that Fretts acted recklessly. Trial Court Order, 12/3/20 at 2; Trial Court Opinion, 2/16/21, at 4-7. The trial court did not dismiss the other two charges. Trial Court Order, 12/3/20 at 2.

On December 16, 2020, the Commonwealth timely filed this appeal from the dismissal of the homicide by vehicle charge.[2] The Commonwealth in its

---

[2] The Commonwealth in its notice of appeal erroneously stated that the appeal was from "the order of the Honorable Lillian Ransom entered in this matter December 3, 2019." 12/16/2020 Notice of Appeal. On May 12, 2021, this Court issued a rule to show cause why the appeal should not be dismissed because no order had been entered on the docket on December 3, 2019. The Commonwealth responded that the appeal is from the order of December 3, 2020 and that "2019" was a typographical error. The Court discharged the rule to show cause and referred the issue to the merits panel. 6/10/21 Order. There is no dispute that the December 3, 2019 date is a typographical error and that the appeal is from the December 3, 2020 order. Such a typographical error may be corrected and does not require dismissal of the appeal. ***Commonwealth v. Mysnyk***, 527 A.2d 1055, 1056 n.2 (Pa. Super. 1987); ***Commonwealth v. Hewlett***, No. 164 EDA 2020, slip op. at 3 & n.4 (Pa.
*(Footnote Continued Next Page)*

notice of appeal certified that "this order terminates or substantially handicaps the prosecution." 12/16/2020 Notice of Appeal. This Court therefore has jurisdiction over this interlocutory appeal under Pa.R.A.P. 311(d).

The Commonwealth raises the following single issue for our review:

> Did the lower court err in ruling that the evidence was insufficient to establish a prima facie case that defendant committed homicide by vehicle, where the evidence showed that defendant failed to yield the right-of-way to the victim-cyclist, interfered with her straight procession across the intersection, and failed to signal his turn, all of which violated the motor vehicle code and caused the victim's death?

Commonwealth's Brief at 5.[3] We conclude that the Commonwealth's evidence was insufficient to establish recklessness, which is an essential element of the offense homicide by vehicle, and therefore affirm the trial court.

Fretts' motion to quash challenged whether the evidence presented by the Commonwealth was sufficient to establish a *prima facie* case with respect to the crime of homicide by vehicle and the other charges. ***Commonwealth***

---

Super. Dec. 23, 2020) (unpublished memorandum). The caption has been corrected to state that the appeal is from "the Order Entered December 3, 2020."

[3] Fretts in his brief requested that this Court quash the appeal for incompleteness of the record because the certified record transmitted to this Court did not contain the two video exhibits. That deficiency in the record has been cured. On April 28, 2021, the Commonwealth filed an application in this Court to supplement the record and this Court, on July 19, 2021, entered an order directing the court of common pleas to certify and transmit a supplemental record containing the two video exhibits. On July 29, 2021, the court of common pleas transmitted a flash drive with the two video exhibits to this Court. The request to quash the appeal for incompleteness of the record is therefore denied.

***v. Wyatt***, 203 A.3d 1115, 1117 (Pa. Super. 2019); ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*).[4] To establish a *prima facie* case, the Commonwealth must produce evidence of every element of the offense that would be sufficient, if presented at a trial and accepted as true, for the judge to permit the case to be decided by a jury. ***Commonwealth v. Montgomery***, 234 A.3d 523, 533 (Pa. 2020); ***Commonwealth v. Huggins***, 836 A.2d 862, 866 (Pa. 2003); ***Commonwealth v. Wroten***, __ A.3d __, __, 2021 PA Super 124, at *10 (filed June 17, 2021). Whether the trial court erred in holding that the Commonwealth failed to establish a *prima facie* case for the charge of homicide by vehicle is a question of law subject to this Court's plenary, *de novo* review. ***Wyatt***, 203 A.3d at 1117; ***Dantzler***, 135 A.3d at 1112.

The homicide by vehicle statute provides:

> Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

---

[4] After a preliminary hearing at which charges have been bound over for trial, a defendant may challenge whether the Commonwealth's evidence is sufficient to establish a *prima facie* case by filing a petition for *habeas corpus* in the common pleas court. ***Dantzler***, at 1111-12. In Philadelphia County, this motion is referred to as a motion to quash. ***Commonwealth v. McBride***, 595 A.2d 589, 590 n.2 (Pa. 1991); ***Dantzler***, at 1111.

75 Pa.C.S. § 3732(a). This offense thus has three elements: 1) that the defendant violated a statute or ordinance relating to operation or use of a vehicle or regulation of traffic other than the driving under the influence statute; 2) that the violation caused the death of another person; and 3) that the defendant's conduct was reckless or grossly negligent. ***Commonwealth v. Sanders***, ___ A.3d ___, ___, 2021 PA Super 163, at *6 (filed August 16, 2021) (*en banc*); ***Commonwealth v. Matroni***, 923 A.2d 444, 446-47 (Pa. Super. 2007).[5]

The state of mind of gross negligence under the homicide by vehicle statute is the same as recklessness. ***Sanders***, ___ A.3d at ___, slip op. at *12; ***Wyatt***, 203 A.3d at 1118; ***Matroni***, 923 A.2d at 448. To establish a *prima facie* case of homicide by vehicle, the Commonwealth was therefore required to produce evidence that Fretts acted recklessly. ***Wyatt***, 203 A.3d at 1118-19.

The Crimes Code defines recklessness as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

---

[5] Homicide by vehicle based on driving under the influence violations is covered by a separate criminal statute, 75 Pa.C.S. § 3735. ***Sanders***, ___ A.3d at ___, slip op. at *6 n.2.

18 Pa.C.S. § 302(b)(3). Recklessness requires proof that the defendant both had actual knowledge of a substantial and unjustifiable risk and disregarded that risk despite that knowledge. *Sanders*, ___ A.3d at ___, slip op. at *12-*13; *Commonwealth v. Sitler*, 144 A.3d 156, 164 (Pa. Super. 2016) (*en banc*).

> Recklessness "implicates knowledge in two ways: (1) the actor must consciously (*i.e.*, with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor." "Conscious disregard" of a risk, in turn, "involves first becoming aware of the risk and then choosing to proceed in spite of the risk."

*Sanders*, ___ A.3d at ___, slip op. at *12-*13 (citations omitted) (quoting *Sitler* and *Huggins*).

Here, there was no evidence that Fretts knew that there was a bicyclist beside the truck when he made the right turn, no evidence that he failed to look before he made the turn, and no evidence that distracted driving caused the accident. The video of the garbage truck cab shows that Fretts had his eyes on the road as he drove and that he looked to the right before he made the turn. Commonwealth Ex. 3.[6] The Commonwealth at oral argument

---

[6] While the Commonwealth is correct in its assertion that Fretts did not stand up from the driver's seat to get a better view of what was below the truck's window until the accident happened, Commonwealth Ex. 3, the Commonwealth does not point to any statute or ordinance that requires drivers to stand up from their seat when looking to make a turn or any authority that would support the conclusion that a driver's failure to stand up in a moving vehicle to get a better view is reckless conduct.

conceded that the bicyclist was in the truck's blind spot and was not visible to Fretts when he reached the intersection and made the right turn.

There was also no evidence of any erratic driving or speeding. The light was green when Fretts made his turn, and the garbage truck was moving at approximately 5 miles per hour. Commonwealth Ex. 3. The Commonwealth's witness at the preliminary hearing testified that Fretts was driving the truck in the proper lane for making a right turn. N.T. Preliminary Hearing at 20. The police officer testified at the preliminary hearing:

> Q. … When that truck enters the intersection of 11th and Spruce, it's already in the far right-hand lane. Correct?
>
> A. It's my opinion that he is in the right lane, yes. However, it is a large truck, so he's not hugging the curb line like a vehicle would because he does need that extra space to make the right turn.
>
> Q. But that's a sensible, reasonable thing to do. Isn't it?
>
> MR. PATTON: Objection.
>
> THE COURT: Overruled. I'll allow it. He's AID [Accident Investigation District]. Overruled.
>
> THE WITNESS: Yes.

*Id.*

Given these facts, it is clear under this Court's *en banc* **Sanders** decision that the Commonwealth's evidence was insufficient to permit a finding of recklessness. In **Sanders**, a bus driver making a left turn struck and killed a 93-year-old pedestrian who was properly crossing the street in a crosswalk. ___ A.3d at ___, slip op. at *1-*3. This Court vacated the bus driver's homicide

- 10 -

by vehicle conviction on the ground that the evidence was insufficient to permit a finding of recklessness where the bus driver made the turn on a green light traveling at 8 miles an hour and looked before turning and there was no evidence that the bus driver could see the pedestrian when she looked to her left.  *Id.* ___ A.3d at ___, slip op. at *13-*20.  The Court, moreover, held that the bus driver's conduct could not be found to be reckless, even though the pedestrian was visible for 45 seconds while the bus was stopped for a red light at the intersection and the driver could have seen him if she had looked while waiting for the light to turn green, rather than looking at work papers, and even though she violated several work rules, including steering the bus with one hand and failing to wait a full 4 seconds before making a left turn.  *Id.* ___ A.3d at ___, slip op. at *8, *13-*20.

Indeed, the absence of knowledge and disregard of risk is far clearer in this case than in *Sanders*.  There is no evidence that Fretts would have been aware that a bicyclist was beside the truck if he had not looked at papers while stopped and no evidence that he violated any work rule.  Contrary to the Commonwealth's contention, the garbage truck video does not show the bicyclist while Fretts is looking at papers.  Rather, the video shows a bicyclist passing the truck's passenger side window while the truck is moving before it reaches the intersection and Fretts is looking at the road ahead in the direction in which he is driving, and this bicyclist is visible on the video for only approximately one second.  Commonwealth Ex. 3.  Moreover, the video does

not even show what Fretts could have seen, as the camera was on the dashboard pointed at Fretts and his co-worker in the passenger seat and was not positioned to show what was visible from the driver's seat. *Id.* While *Sanders* was an appeal from a verdict after trial rather than a ruling on whether the Commonwealth had established a *prima facie* case, a *prima facie* case requires evidence of every element of the offense that would be sufficient, if presented at a trial and accepted as true, for the judge to permit the case to be decided by the fact finder. *Montgomery*, 234 A.3d at 533; *Huggins*, 836 A.2d at 866; *Wroten*, ___ A.3d at ___, slip op. at *10. The issue decided in *Sanders* was thus the same the issue as here, whether the evidence was sufficient to permit a fact finder to find the element of recklessness.

The Commonwealth contends that it showed that Fretts violated three sections of the Vehicle Code and that this number of violations is sufficient to show recklessness. Commission of multiple Vehicle Code violations, however, does not *ipso facto* show recklessness and proof of multiple violations, without more, is not sufficient evidence of recklessness to establish a *prima facie* case that the defendant committed the crime of homicide by vehicle. *Commonwealth v. Karner*, 193 A.3d 986, 993 (Pa. Super. 2018). *See also Sanders*, ___ A.3d at ___, slip op. at *6-*8, *13-*20 (evidence insufficient to permit finding of recklessness even though bus driver committed three violations of the Vehicle Code). *Matroni*, relied on by the Commonwealth, is

not to the contrary. In **Matroni**, the Vehicle Code violations included speeding, tailgating, and erratic lane changes, all of which involve conscious decisions to engage in dangerous behavior. 923 A.2d at 448-49.

The three violations that the Commonwealth claims that it showed here are failure to yield to the bicyclist, 75 Pa.C.S. § 3323(c), interference with the bicyclist's straight procession through the intersection, 75 Pa.C.S. § 3331(e), and failure to use a turn signal, 75 Pa.C.S. § 3334.[7] None of these violations are probative of any conscious knowledge of a substantial risk or conscious decision to act notwithstanding the risk.

Failure to yield the right of way to a person that the driver does not see despite looking and interference with such an unseen person's proceeding through an intersection do not show recklessness. **Sanders**, ___ A.3d at ___, slip op. at *13-*18. To the extent that the Commonwealth claims that Fretts violated Section 3323(c) of the Vehicle Code by not stopping or slowing down before turning, that contention is without merit. The requirement in Section 3323(c) that a driver slow or stop a vehicle applies to intersections controlled by a yield sign that gives a preferential right-of-way to other traffic and applies

---

[7] The Commonwealth does not contend in this appeal that the earbud in Fretts' right ear is a violation of the Vehicle Code, although it made such an argument at the preliminary hearing. N.T. Preliminary Hearing at 41. Even if it were asserted, such an argument would fail. The Vehicle Code provision prohibiting earbuds does not prohibit all single-ear earbuds, 75 Pa.C.S. § 3314(b), and the Commonwealth admits that it did not introduce evidence from which it could be determined that Fretts' earbud violated the statute. Appellant's Brief at 18 n.4.

only to a "driver of a vehicle approaching a yield sign." 75 Pa.C.S. § 3323(a), (c). The intersection where the accident occurred was regulated by a traffic light, not a stop sign or a yield sign, and the traffic light was green when Fretts approached the intersection and made his turn. The only yield sign here, the "YIELD TO BIKES" sign, was not at the intersection; it was 125 feet before the intersection, at the point where drivers are directed to merge into the rightmost lane if they are going to turn right. Commonwealth Ex. 4; N.T. Preliminary Hearing at 8, 10-11, 21. There was no evidence that Fretts failed to comply with that sign as he approached it. As discussed above, the police officer testified at the preliminary hearing that the garbage truck was already in the rightmost lane before it entered the intersection and made its right turn. N.T. Preliminary Hearing at 20. There is no evidence that Fretts failed to properly yield to bicyclists when he moved the truck into that lane. *Id.* at 21-23.

The remaining Vehicle Code violation, failure to use a turn signal is an omission, not an affirmative act that shows any conscious decision to take or disregard a risk. Forgetting to use a turn signal or failing to notice that it turned off when the vehicle straightens out after merging into another lane thus shows only negligence, not recklessness. The lone case that the Commonwealth cites concerning failure to use a turn signal, *MacNeill v. Makos*, 77 A.2d 378 (Pa. 1951), does not suggest that mere failure to signal

a turn shows reckless conduct. **MacNeill** was a civil negligence action and does not discuss the issue of recklessness or conscious disregard of risk at all.

The other evidence that the Commonwealth contends shows recklessness in this case is likewise insufficient to permit a finding of reckless conduct. Steering a vehicle with one hand, even a very large vehicle, does not show recklessness where there is no evidence that the driver was unable to properly control the vehicle. **Sanders**, ___ A.3d at ___, slip op. at *18 (driving bus with one hand whiling turning, which was a violation of driver's employer's work rule, "[a]t most … constituted negligence but not a conscious disregard of a substantial and unjustifiable risk" where there was no loss of control of the bus). Looking at paperwork while stopped for a red light, rather than checking whether anything is in the way of an intended turn, does not constitute reckless conduct where the driver in fact looks before making his turn. **Id.** Indeed, unlike **Sanders**, there is no evidence here that looking at paperwork played any role in the accident, as there is no evidence that the bicyclist was visible at that time or that Fretts could have even checked the intersection for bicyclists or pedestrians, since he was not at the intersection when the light was red. The fact that Fretts had an earbud in one ear does not show inattentiveness to the road or other vehicles and pedestrians, as the video shows that his eyes were on the road and there is no evidence that any communication was coming through the earbud that caused a distraction. There is also no evidence that any effect that the earbud might have had on

Fretts' ability to hear played any role in this accident, which was caused by the fact that he did not see the bicyclist and not by failure to hear. The Commonwealth's contention that Fretts' "fail[ure] to perceive whether any pedestrians or cyclists were in his path" before turning shows recklessness, Appellant's Brief at 15, is invalid because recklessness depends on the driver's knowledge and, as the Commonwealth conceded at argument, Fretts could not see the bicyclist. *Sanders*, ___ A.3d at ___, slip op. at *12-*18.

The cases cited by the Commonwealth likewise do not support any conclusion that Fretts could be found to have acted recklessly. In *Commonwealth v. Setsodi*, 450 A.2d 29 (Pa. Super. 1982), the driver made a left turn in front of an approaching motorcycle traveling in the opposite direction without looking ahead to see if there was any oncoming traffic and there was evidence that the motorcycle with which she collided was clearly visible and would have been seen by her if she had looked. *Id.* at 30-32. Here, in contrast, Fretts looked to the right before his turn and there was no evidence that the bicyclist was visible to him. In both *Commonwealth v. Moyer*, 171 A.3d 849 (Pa. Super. 2017) and *Commonwealth v. Jumper*, 515 A.2d 540 (Pa. 1986), the driver ran through a traffic control device. *Moyer*, 171 A.3d at 851, 854 (driver ran through a stop sign at 12 miles per hour into 35-mile-per-hour cross-traffic); *Jumper*, 515 A.2d at 540-41 (driver

ran a red light). In this case, Fretts had a green light when he drove into the intersection and made his turn.[8]

The Commonwealth also argues that the trial court's failure to dismiss the charge of involuntary manslaughter is inconsistent with its dismissal of the homicide by vehicle charge. The Commonwealth is correct that the *mens rea* requirement of recklessness is the same for both offenses. **Sanders**, ___ A.3d at ___, slip op. at *8-*12; **Commonwealth v. Grimes**, 842 A.2d 432, 434 n.5 (Pa. Super. 2004). That, however, does not support reversal of its dismissal of the homicide by vehicle charge. The trial court did not make any finding that there was evidence of recklessness in denying the motion to quash the involuntary manslaughter charge. Moreover, what the trial court concluded about the sufficiency of the evidence does not affect this appeal, as the Court's review of a decision on whether the Commonwealth has established a *prima facie* case is plenary and *de novo*. **Wyatt**, 203 A.3d at 1117; **Dantzler**, 135 A.3d at 1112. As we have determined that the Commonwealth's evidence is

---

[8] The remaining cases on which the Commonwealth relies all involve affirmative acts of erratic driving that bear even less resemblance to this intersection accident. **See Commonwealth v. Lamonda**, 52 A.3d 365, 369 (Pa. Super. 2012) (*en banc*) (driver steered his vehicle out of its lane of travel into oncoming traffic); **Matroni**, 923 A.2d at 448-49 (speeding, tailgating, and erratic lane changes); **Commonwealth v. Grimes**, 842 A.2d 432, 435 (Pa. Super. 2004) (driver "weaved all over the roadway and repeatedly swerved into oncoming traffic an estimated ten to twenty times"); **Commonwealth v. Francis**, 665 A.2d 821, 823 (Pa. Super. 1995) (driver, while driving in the center lane of an interstate highway, put his vehicle in reverse and backed up).

insufficient to permit a finding of recklessness here, the inconsistency in the trial court's decisions on the homicide by vehicle and involuntary manslaughter charges shows only that the trial court erred in denying the motion to quash the involuntary manslaughter charge, not that it erred in granting the motion to quash the homicide by vehicle charge.

The accident and death of the bicyclist that occurred in this case were unquestionably tragic. But not every tragedy is a crime, let alone a felony. The legislature has erected a firm boundary between the reckless conduct required for a charge of homicide by vehicle and mere negligence or careless driving, even when the results are tragic. ***Sanders***, ___ A.3d at ___, slip op. at *20. Because the evidence put forth by the Commonwealth, taking all inferences in the Commonwealth's favor, is not sufficient to permit any finder of fact to conclude that Fretts acted recklessly, the trial court properly dismissed the charge of homicide by vehicle. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2021

- 18 -