Commonwealth *v.* Busler, Appellant.

360

*James Victor Voss*, with him *Neely and Voss*, for appellant.

*D. Dale Claypool*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, December 20, 1971:

George T. Busler, Jr., was the operator of a motor vehicle involved in a fatal accident in Armstrong County, and was subsequently arrested and indicted for involuntary manslaughter.  A nonjury trial resulted in a verdict of guilty, and after post trial motions were denied a prison sentence was imposed.  On appeal, the Superior Court affirmed the judgment without opinion, 218 Pa. Superior Ct. 877, 279 A. 2d 204 (1971).  We granted allocatur, and now reverse because we are per-

suaded the trial evidence was insufficient as a matter of law to establish guilt of the crime beyond a reasonable doubt.

In *Commonwealth v. Mayberry,* 290 Pa. 195, 198, 138 A. 686 (1927), involuntary manslaughter was said to consist in "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." See also Act of June 24, 1939, P. L. 872, 18 P.S. §4703.

And, as stated in *Commonwealth v. Holman,* 160 Pa. Superior Ct. 211, 212, 50 A. 2d 720 (1947) : "Where the act in itself is not unlawful, that is, contrary to law, then to make it criminal, negligence must be such a departure from what would be the conduct of an ordinary prudent man under the same circumstances as to evidence a disregard of human life or an indifference to consequences."

Conduct made unlawful by The Vehicle Code is not necessarily the kind of "unlawful act" included within the definition of involuntary manslaughter, for in many instances the code makes unlawful, acts of ordinary negligence. Hence, to sustain a conviction of involuntary manslaughter for a death resulting from an act which constitutes a transgression of The Vehicle Code, it must be established that such violation in itself, or together with the surrounding circumstances, "evidence a disregard of human life or an indifference to consequences." See *Commonwealth v. Clowser,* 212 Pa. Superior Ct. 208, 239 A. 2d 870 (1968) ; and, *Commonwealth v. Holman,* supra.

The evidence in this case, viewed in a light most favorable to the Commonwealth, fails to establish beyond a reasonable doubt the existence of the necessary "disregard of human life or an indifference to conse-

quences." And, of course, before one may be convicted of a crime, the Commonwealth is charged with the responsibility of proving every essential element of the crime beyond a reasonable doubt. *Commonwealth v. Radford,* 428 Pa. 279, 236 A. 2d 802 (1968).

The record discloses the following pertinent facts:

On September 29, 1968, at approximately 6:50 p.m., Busler was operating a motor vehicle south on Route 66. Road conditions were clear and dry. Route 66 is a two-lane highway running north and south. The highway, north of Goheenville, Armstrong County, traverses a hill. From the crest of the hill Route 66 south proceeds down a grade to a dip which is approximately 500 feet from the crest. Route 66 south then curves slightly and proceeds up an incline. Busler's motor vehicle collided with a northbound vehicle operated by Doris Jean Pierson,[1] the impact occurring at a point 50-75 feet south of the dip and in the northbound lane of traffic. An officer, Arrow, who investigated the scene observed a line of skid marks measuring 203 feet from the point of impact, northward. Between the north and southbound lanes, from the crest to a point about 100 feet north of the dip is a broken line indicating a passing zone.

According to the testimony of a Commonwealth witness, Patterson, Busler's motor vehicle had been traveling to the rear of·five vehicles proceeding south on the downgrade. First in line was a camper, followed by Patterson's vehicle, a station wagon, two automobiles and then Busler. Busler passed the two cars immediately in front of him and then returned to the southbound lane. He then pulled out again and passed both the station wagon and Patterson. When Busler was

---

[1] Appellant's father who was a passenger in the Busler vehicle died instantly from injuries suffered in the collision. About one month later, Miss Pierson died from injuries suffered in the accident.

approximately 50 feet beyond Patterson, he started to pass the camper, which was 70 feet beyond Patterson's vehicle, slowing up the entire line of traffic. The brake lights of the Busler vehicle then went on and the vehicle abruptly turned and skidded sideways down the hill to a point about 70 feet south of the dip where further movement was aborted by collision with the Pierson vehicle.

The trial court concluded Busler's conduct in the operation of his motor vehicle was reckless based on the following findings of fact: (1) His vehicle was operated at an excessive rate of speed immediately before the accident; and (2) when his vehicle attempted to pass the camper, Busler did not have an unobstructed view of at least 500 feet as required by Section 1008(b) of The Vehicle Code, Act of April 29, 1959, P. L. 58, 75 P.S. §1008(b). The record fails to sustain either of these two findings.

The trial testimony established that the speed limit on the highway involved was 55 miles per hour. The evidence offered by the Commonwealth was that Busler's vehicle was traveling at a rate of speed of 50 miles an hour at most. Hence, it was being operated within the permissible speed limit.

The court's finding that Busler attempted to or made an illegal pass is also controverted by the Commonwealth's own evidence. In this connection, the point in time on which we must focus is the moment Busler completed his pass of the Patterson vehicle and began to overtake the camper. The police officer who investigated the accident testified for the Commonwealth that Busler was in a passing zone at this point (evidenced by broken lines) and that he "had lots of room" to make the pass. The officer also estimated that Busler's visability from the point he began his pass of the camper was 500 feet.

The order of the Superior Court and the judgment of the court of original jurisdiction are reversed, and Busler is discharged.

Mr. Chief Justice BELL and Mr. Justice ROBERTS took no part in the consideration or decision of this case.