389 A.2d 152

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Walter G. KAULBACK, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1976.

Decided July 12, 1978.

Reargument Denied Aug. 11, 1978.

14

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Commonwealth; appellant.

John A. Boccabella, Reading, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellee, Walter G. Kaulback, Jr., was charged with involuntary manslaughter under Section 2504 of the Crimes Code[1] arising from the death of a passenger in a car struck

1.  18 Pa.C.S. § 2504.

by appellee's car. At the conclusion of the Commonwealth's case, the trial court sustained a demurrer. As is their right, the Commonwealth has filed this appeal. We reverse.

The law in this Commonwealth is well established that the test to be applied upon consideration of the granting of a demurrer is whether the Commonwealth's evidence and all reasonable inferences therefrom are sufficient to support a verdict of guilty of the crime under consideration. The evidence must, in such cases, be read in the light most favorable to the Commonwealth. *Commonwealth v. Carroll,* 443 Pa. 518, 278 A.2d 898 (1971); *Commonwealth v. Zeringo,* 214 Pa.Super. 300, 257 A.2d 692 (1969).

With these principles in mind, the Commonwealth's evidence establishes that a violent intersection collision occurred on August 30, 1975, at about 10:30 p. m. Although it was dark, there was at least one street light illuminating the intersection. The weather was dry and clear. Traffic at the intersection was controlled by two overhead traffic signals operating on a green-yellow-red cycle. Both vehicles involved had their headlights on. Appellee entered against a red signal that had been red for a period of time sufficient to allow the other vehicle to delay for 2 to 6 seconds before starting on the green signal and then to travel 72 feet into the intersection to the point of impact.

The intersection is a right angle intersection where Museum Road and Old Mill Road, public highways in Berks County, cross. Museum Road runs east and west, Old Mill Road north and south. Each highway is about 40 feet wide and provides for traffic in both directions.

Mr. David Ullrich was operating his Cadillac automobile in a southerly direction on Old Mill Road. As his vehicle approached the intersection the traffic signal was red against him. He stopped until the light turned green and then, after delaying for 2 to 6 seconds, moved 72 feet into the intersection, intending to make a left hand turn. This placed the front of the Ullrich vehicle over the center line of Museum Road and at a point approximately 6 feet west of

the east crosswalk across Museum Road. At this point the Ullrich car was violently struck by the appellee's car which was traveling in a westerly direction on Museum Road and which entered the intersection against a red light. As a result of this impact, the Ullrich car was spun around and moved 24 feet in a southerly direction. Appellee's car basically remained at the point of impact but spun around so that it faced in a southerly direction.

Appellee was alone in his car. Mr. Ullrich was accompanied by his wife and their eighteen year old daughter. Mrs. Ullrich, seated on the passenger side of the front seat, died as a result of injuries suffered in the collision. Miss Ullrich, a passenger in the back seat, was injured, as were both drivers.

After the Ullrich car entered the intersection, a period of time from 6 to 7 seconds, sufficient to allow it to travel 72 feet from a stopped position, elapsed. A permissible inference from that evidence is that the Ullrich car was in plain view of the appellee during that time. The light was red against appellee during that interval, and the light had been yellow for 8 seconds prior to that interval. Thus a 16 to 21 second period intervened between the yellow light's initial warning to appellee and the collision. The photographic evidence shows severe and extensive damage to both vehicles, with the point of impact established as the left front and side of the Ullrich car and the front of the appellee's car. Debris was scattered widely throughout the intersection by the impact.

The Commonwealth's only specific testimony as to speed was by an eyewitness to the impact, Mary Premici, who was driving a car that was stopped two cars behind Ullrich at the red light. Her testimony on the point is on direct:

"Q. Are you able to give an opinion as to the approximate speed of the automobile which was proceeding on Museum Road?

A. I couldn't say for sure, but it appeared to me it was going above the speed limit." (N.T. 22)

On cross-examination the following appears:

"Q. In answer to one of Mr. Babb's questions, you said you were not really sure, but you estimate the Kaulback vehicle was exceeding the speed limit?

A. Yes.

Q. How did you estimate that?

A. Because it seemed like he was going faster than the other cars going down the road.

Q. Did you see other cars going down the road?

A. Yes.

Q. Going back to August 30, 1975, think very carefully of what you saw, are you positive you saw the Kaulback vehicle before the collision?

A. Maybe just one second before they collided.

Q. And you are estimating speed from that one second?

A. I estimated it with the force with which the cars collided.

Q. So you didn't see the car speeding, is that correct?

A. Yes.

Q. Have you ever been involved in anything where a car was going 30, 35 miles an hour?

A. No.

Q. You do not know how much impact that would have?

A. No.

Q. Isn't it a fact that you did not see the Kaulback vehicle before the crash?

A. Yes.

Q. Is it a fact?

A. Yes, it is." (N.T. 24)

Of course this is not definitive testimony regarding speed, and hence it is true, as the trial court observed, that speed in terms of miles per hour is not established.[2] That is not, however, the same as saying speed was not a factor that the fact finder could consider.

2. We note, in addition, that the record does not disclose any evidence of the speed limit in the area.

■ Physical evidence in and of itself may permit the fact finder properly to infer speed, and this case is an example of where that principle is particularly appropriate. The Ullrich car proceeded slowly from its stopped position a distance of 72 feet before impact. Photographs establish a violent and glancing impact on its left front and side. It traveled 24 feet in a direction approximately 90° from its direction at impact. Appellee's car sustained a violent impact basically to the front end of the car, which spun it in excess of 90° from its direction at impact. Four persons were injured, one dying as a result of the injuries, and two requiring undisclosed periods of hospitalization.

■ The appellee, in urging the affirmance of the demurrer, relies on the principles set forth in *Commonwealth v. Busler,* 445 Pa. 359, 284 A.2d 783 (1971), and *Commonwealth v. Clowser,* 212 Pa.Super. 208, 239 A.2d 870 (1968). The instant case bears a close resemblance to *Commonwealth v. Greer,* 232 Pa.Super. 448, 335 A.2d 770 (1975) (Price, J., filed a dissenting opinion in which Spaeth, J., joined), which is also cited by appellee. Under the evidence here presented, however, we are not persuaded that those cases are controlling.

It is certainly the present law in Pennsylvania that not every violation of law or unlawful act in the operation of a motor vehicle will render the operator criminally responsible for deaths which may result. Such an operator, to be criminally responsible, must evidence a disregard of human life or an indifference to the consequences of his acts. This is based on the sound principle that there must be found from the evidence some degree of culpable behavior or reckless disregard for the safety of others before a conviction may be sustained.

We are all aware of the well established standard trial judge's charge concerning intersection accidents in an ordinary trespass action. As most commonly stated, based upon the experience of man since the advent of the motor vehicle, intersections are areas that are fraught with hazard; places where the conflict of traffic moving in different directions ·

requires extreme care and alertness on the part of those who seek to traverse it. An operator of a vehicle may not relax his care or lessen his duty to others simply due to the presence of a traffic signal. Those admonitions are no less applicable to a consideration of the conduct of this appellee.

An innocent member of the public has lost her life. This woman had every right and expectation that the law of this Commonwealth protected her and other members of the public against death and serious bodily injury while traveling upon our highways. Our courts must be diligent in extending this protection, yet at the same time, safeguarding the rights of citizens, like appellee, who come before them charged with the crime of involuntary manslaughter.

In *Commonwealth v. Clowser, supra,* the only evidence presented by the Commonwealth was the appellant's failure to yield where he had a stop sign, and this court held that there was no evidence that this violation occurred recklessly or carelessly. In *Commonwealth v. Busler, supra,* the supreme court found from the evidence presented that there were no violations of the Motor Vehicle Code and that there was no evidence of wanton or reckless conduct. In *Commonwealth v. Greer, supra,* the majority conceded that appellee did not act with caution, but held that the evidence could not support a finding of disregard for human life or indifference to consequences.

In the case before us, testimony would support a finding that appellee ran a red light, which had been red for a considerable period of time, on a clear and dry night; sped into and through an illuminated intersection; struck a car, which was assuredly within his clear vision for the same considerable time and which could not have been speeding; and caused a violent collision, which killed an innocent passenger in the other car. Such evidence, if accepted by the fact finder, would support a verdict of guilty to the crime of involuntary manslaughter since it would display a departure from prudent conduct constituting a reckless disregard of human life or an indifference to consequences. With the carnage we witness daily on our highways we can

ill afford to encourage such conduct. Our decision is not a departure from the principles of law established in this Commonwealth. It is, however, notice that conduct such as presented by the evidence in this case is subject to the judgment of the fact finder as to guilt or innocence.

Accordingly, the order granting the demurrer is reversed and the case is remanded for a new trial.

HOFFMAN, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.