389 A.2d 138

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Howard G. EL.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1977.

Decided July 12, 1978.

Gaele M. Barthold, Assistant District Attorney, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellant.

Dennis J. Cogan, Philadelphia, for appellee.

Before WATKINS, President Judge, JACOBS, HOFF-MAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The Commonwealth brings this appeal from the lower court's granting of defense counsel's motion in arrest of judgment. For the reasons set forth below, we reverse the lower court's order and reinstate the verdict.

The relevant facts are as follows. Appellee, Howard G. El, was arrested and charged with murder, voluntary manslaughter, involuntary manslaughter, and conspiracy in connection with the death of Caprice Nichole Bey, aged five. Caprice died as a consequence of multiple injuries to her head, trunk and extremities and the Commonwealth alleged that appellee beat the child so severely that the infant died as a result. Prior to trial, the Commonwealth certified that the degree of guilt was no higher than third degree murder. Thereupon the lower court heard the case without a jury,

granting a motion for a directed verdict of not guilty of conspiracy but finding appellee guilty of involuntary manslaughter. Post-trial motions were filed and, as indicated above, a motion in arrest of judgment was granted.[1]

The lower court, by way of explanation said that it granted appellee's motion because the medical examiner had testified that "very, very critically [sic] to the mechanism of death are multiple impacts to the head producing swelling of the brain resulting in the terminal mechanism of the death of the deceased," yet appellee had given a statement to police in which he said that he hit Caprice everywhere but on the face. The lower court interpreted the medical examiner's statement to mean that *the* cause of death was solely the blows to the head. We conclude that the lower court is in error on this point.

The medical examiner was asked repeatedly what, in his opinion, caused the death of Caprice. At least four times he testified that the cause of death was multiple injuries to the head, trunk, and extremities. At no time did the witness testify that blows to the head were the *sole* cause of death.

Furthermore, the testimony quoted by the lower court was taken out of context, thereby overemphasizing this single statement. The entire testimony went as follows:

"District Attorney (D.A.): Would you explain what is the cause of death in this case?

Medical Examiner (M.E.): Yes, sir. The cause of death is multiple injuries to the head, trunk and extremities.

D.A.: What type of multiple injuries, doctor, if you know?

M.E.: There are several . . .

1. The reason given by the lower court for granting the motion in arrest of judgment was that the Commonwealth's case had a missing link in its evidence regarding the claim of causation of the victim's death. The medical examiner had testified that the decedent's head injuries were "critical" to the mechanism of death. The lower court, therefore, ruled that it was incumbent upon the Commonwealth to prove that appellee inflicted the head injuries. Because this issue is purely a question of law, the Commonwealth may appeal from the lower court's ruling: *Commonwealth v. Blevins,* 453 Pa. 481, 309 *A.* 2d 421, appeal after remand, 459 Pa. 652, 331 *A.*2d 180 (1973); *Commonwealth v. Yoder,* 236 Pa.Super.Ct. 538, 344 *A.*2d 589 (1975).

M.E.: Very, very critically [sic] to the mechanism of death are multiple impacts to the head producing swelling of the brain resulting in a terminal mechanism of the death of the deceased . . .

M.E.: In addition to the brain swelling and the blunt impacts to the head producing this swelling, there are multiple severe impacts to the trunk and extremities producing very extensive areas of hemorrhage areas in some instance involving the large skin surfaces which would produce shock and further contribute to the mechanism of death of this deceased."

In other testimony, the witness also stated:

"In this specific instance, the mechanism provided by the multiple impacts to the head, trunk and extremities is number one, of shock from the multiplicity of the injuries and the severity of them and, in addition, the swelling of the brain." (R. at 280).

When he was first asked for his opinion as to the cause of death, the medical examiner answered as follows:

"D.A.: Doctor, after performing your external-internal examinations, did you reach a conclusion as to the cause of death in this case?

M.E.: I did.

D.A.: And would you specifically give us the cause of death, in your opinion, in this case?

M.E.: Yes, sir. The cause of death in the case of Nichole Bey, 4528–75, were multiple injuries to the head, trunk and extremities." (R. 182).

Later, when defense counsel attempted to get the medical examiner to pin-point which injury to the extremities caused the infant's death, the doctor said that he could not do this, as indicated by this quote.

"Defense Counsel: Doctor, did the wounds which you found to the extremities cause the death of the victim?

M.E.: Cause the death.

Defense Counsel: Pardon me?

Medical Examiner: Your question was did they cause the death?

D.C.: Yes.

M.E.: They're a part of the death picture.

D.C.: Now, sir, taking each injury to the extremities, one of one, please tell us how it contributed to the cause of death.

M.E.: I cannot. They did not contribute to the cause of death one by one, but they served cumulatively to cause the death.

D.C.: Explain that to us, doctor, as you refer to each paragraph one to 36.

M.E.: I said that couldn't be done, counselor. They serve cumulatively to cause the death, but they individually cannot be separated."

The record discloses that appellee gave the police a statement in which he admitted that he beat the child repeatedly with a belt, his hands, and a stick, thereby inflicting the bulk of the external injuries noted by Dr. Fillinger.

■ Case law tells us that a defendant's actions are the legal cause of death if they are a direct and substantial factor in bringing it about. *Commonwealth v. Paquetti,* 451 Pa. 250, 301 *A.*2d 600 (1973); *Commonwealth v. Stafford,* 451 Pa. 95, 301 *A.*2d 600 (1973); *Commonwealth v. Johnson,* 445 Pa. 276, 284 *A.*2d 734 (1971). As our Supreme Court has said,

"Although we have expressly rejected the tort theory of causation in assessing criminal responsibility, *Commonwealth v. Root,* supra, it has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." [Citations omitted.] *Commonwealth v. Skufca,* 457 Pa. 124, 132, 321 *A.*2d 889, 894 (1974), appeal dismissed, 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974).

 In the instant case, the medical examiner steadfastly maintained that Caprice died as a result of total number of blows to various parts of her body. By his own words, appellee admits beating the child with various instruments over most of her body. The medical examiner testified that some of the injuries he saw were characteristics of blows by a wire or cord and others by an instrument such as a broom handle, both of which conform with appellee's admissions. For the trial court to properly grant a motion in arrest of judgment, it must be determined that, accepting all the evidence and reasonable inferences supporting such a verdict, that the evidence would be insufficient in law to find beyond a reasonable doubt that defendant is guilty of the crime charged. *Commonwealth v. Meadows,* 471 Pa. 201, 369 *A.*2d 1266 (1977); *Commonwealth v. Kominsky,* 240 Pa.Super. 532, 361 *A.*2d 794 (1976). This court is also under an obligation to give the verdict winner the benefit of all reasonable inferences derived from all the evidence supporting a verdict. *Commonwealth v. Cash,* 240 Pa.Super. 123, 367 *A.*2d 726 (1976).

 The evidence presented by the Commonwealth in the case *sub judice* may not prove beyond a reasonable doubt that appellee inflicted blows to the victim's face but it most certainly does support a finding that appellee was responsible for the bulk of the bruises and injuries to Caprice's trunk and extremities. We cannot emphasize enough the fact that the medical examiner refused to label the injuries to any particular area as the cause of death but that he consistently maintained that the blows to the head along with those to the trunk and extremities were together the cause of death. We fail to see how this evidence could be labeled legally insufficient, therefore we reverse the lower court's ruling and reinstate the verdict.

The ruling of the trial court is reversed and the verdict of guilty of involuntary manslaughter is hereby reinstated.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.