398 A.2d 209

**COMMONWEALTH of Pennsylvania**

v.

**Lowell Mehaffey AGNEW, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 23, 1978.

Decided Feb. 15, 1979.

Leonard G. Ambrose, III, Erie, for appellant.

Robert S. Bailey, Assistant District Attorney, Meadville, for Commonwealth, appellee.

Before CERCONE, WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

This case involves a motor vehicle accident in which the survivor, appellant Lowell Mehaffey Agnew, was convicted of involuntary manslaughter. He now appeals, contending that there was insufficient evidence to sustain the conviction. We agree that the Commonwealth has not proved the requisite *mens rea* for involuntary manslaughter, and, therefore, we vacate the judgment of sentence and order Agnew discharged.

Accepting as true all of the Commonwealth's evidence and all reasonable inferences therefrom, the facts are as follows. At approximately 11:30 p. m. on the evening of October 4, 1975, Agnew, a farmer, had finished disking[1] a field owned by his father. To return home, he had to drive his tractor over Route 285 in Crawford County, Pennsylvania and pull the disk along behind him. Route 285 is a two-lane highway, 33 feet wide including the berm on either side. The road is bounded on the outside of either berm by guard rails. There is no municipal lighting in this rural stretch of the road. Agnew was aware of the characteristics of the road, having travelled it before.

1. "Disking" consists of plowing and cultivating a piece of farmland, usually by pulling a wide, flat machine with a series of sharp, circular tools which dig up the ground below. The machine is called a "disk."

The tractor Agnew was driving was just under 11 feet wide, and was equipped with front headlights four feet apart, and front-flashing yellow lights on the top of the tractor cab. The disk was seventeen feet, four inches wide, was painted a dark green, and was not itself equipped with any lights or reflective devices. Agnew placed "Slow Moving Vehicle" signs on the tractor and the disk.

Proceeding westerly on Route 285 and approaching the intersection with McMichael Road, Agnew drove his tractor between 15 and 20 miles per hour. He saw an approaching automobile in the eastbound lane travelling about 55 miles per hour. Agnew slowed down the tractor and pulled over to the right, driving with his wheels on the berm, so that the disk was within a foot of the guard rails. The disk still encroached over the center line by one to two feet. The oncoming car was close to the center line, but never left its lane of traffic. The car never slowed down or changed its direction, although there was room for the car to pass safely. Realizing a collision was imminent, Agnew stopped the tractor, but as he did so, the car hit the outside of the disk. The car spun around several times and came to rest demolished. The driver and his passenger were killed. The disk came to rest approximately four feet into the eastbound lane.

During the course of his investigation, a State Trooper parked his car 100 feet away from the tractor and, with the aid of his headlights and the illumination of the blinking lights of the ambulance and the wrecking crew then on the scene, was able to see the tractor, but was unable to see the disk behind it. The Trooper was unable to notice anything behind the tractor until he came to within 30 or 40 feet of the tractor.

The state of mind, or *mens rea*, which characterizes involuntary manslaughter is recklessness or gross negligence: a great departure from the standard of ordinary care evidencing a disregard for human life or an indifference to the possible consequences of the actor's conduct. *Common-*

428

*wealth v. Polimeni,* 474 Pa. 430, 442, 378 A.2d 1189, 1195 (1977); *Commonwealth v. Kominsky,* 240 Pa.Super. 532, 539, 361 A.2d 794 (1976). The same standard applies to deaths caused by motor vehicle violations:

"Conduct made unlawful by the Motor Vehicle Code is not necessarily the kind of 'unlawful act' included within the definition of involuntary manslaughter, for in many instances, the Code makes unlawful, acts of ordinary negligence. Hence, to sustain a conviction of involuntary manslaughter for a death resulting from an act which constitutes a transgression of the Motor Vehicle Code, it must be established that such violation . . . together with the surrounding circumstances, 'evidences a disregard of human life or an indifference to consequences.' " *Commonwealth v. Busler,* 445 Pa. 359, 361, 284 A.2d 783, 784 (1971). *See also Commonwealth v. Kaulback,* 256 Pa.Super. 13, 18–20, 389 A.2d 152, 154–55 (1978); *Commonwealth v. Trainor,* 252 Pa.Super. 332, 337, 381 A.2d 944, 947 (1977); *Commonwealth v. Greer,* 232 Pa.Super. 448, 450, 335 A.2d 770 (1975). Thus, we have held the evidence insufficient to sustain a conviction for involuntary manslaughter where the driver of a motor vehicle was speeding,[2] was driving on the berm of the road,[3] was passing on the wrong side of the road under slippery conditions,[4] failed to yield the right of way at a stop sign,[5] and inattentively encroached upon the oncoming lane.[6]

We feel that the facts in the instant case also fail to show Agnew's disregard for human life or an indifference to the possible consequences of his actions. While the evidence shows that Agnew committed two summary offenses

2. *Commonwealth v. Sisca,* 245 Pa.Super. 125, 369 A.2d 325 (1976).

3. *Commonwealth v. Gochenaur,* 234 Pa.Super. 588, 341 A.2d 163 (1975).

4. *Commonwealth v. Greer,* 232 Pa.Super. 448, 335 A.2d 770 (1975).

5. *Commonwealth v. Clowser,* 212 Pa.Super. 208, 239 A.2d 870 (1968).

6. *Commonwealth v. Trainor,* 252 Pa.Super. 332, 381 A.2d 944 (1977).

under the Motor Vehicle Code [7] which were substantial factors in bringing about the accident, *Commonwealth v. El,* 255 Pa.Super. 597, 602, 389 A.2d 138, 140 (1978), this in itself is not sufficient to sustain a charge of involuntary manslaughter. *Busler, supra.* However, the Commonwealth argues that since Agnew drove his tractor at night knowing that the unlighted extremities of the towed disk would encroach upon the oncoming lane, the requisite *mens rea* was present. However, what must be shown is *disregard* for human life, and an *indifference* to consequences. Here the record shows that Agnew was quite aware of the risk he created and took positive steps to reduce the risk. He placed flashing yellow lights on the top of the tractor cab, placed warning signs on the tractor and disk, and proceeded at a low rate of speed. Obviously, as the opinion of the lower court concludes, "[t]he precautions were tragically inadequate." Still, the fact that Agnew took these precautions negates the requisite *disregard* of human life. Additionally, when Agnew perceived the oncoming car, he took every possible step to avoid a collision, pulling his tractor over to the right so far as the guard rails would allow by driving on the berm, and slowing his tractor down to a stop. This is not an indifference to potential consequences, but a conscientious attempt to reduce the risk of an accident. Unhappily, the oncoming car never saw the towed disk in his lane and drove into it at full speed. While a jury could find Agnew guilty of ordinary negligence and impose civil liability on him, we assume, his actions disprove the "disregard of human life and indifference to consequences" *mens rea* necessary to support the criminal charge of involuntary manslaughter.

Judgment of sentence vacated and the appellant discharged.

WIEAND, J., files a dissenting statement.

7. Act of April 29, 1959 P.L. 58, §§ 902(a) (maximum width of farm equipment), 1006 (yielding one-half of the roadway to oncoming vehicle), since repealed by the Act of June 17, 1976 P.L. 162, No. 81, eff. July 1, 1977; 75 Pa. C.S.A. § 101 et seq.

WIEAND, Judge, dissenting:

I dissent and would affirm the judgment of sentence for the reasons stated in the opinion of the court below.