[No. F003974. Fifth Dist. June 3, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL HOOPER, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

Linda Stoick, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe, Krista J. Kmetz and David De Alba, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAMLIN, J.**—Defendant Michael Hooper appeals from his conviction by jury of arson involving forest land. (Pen. Code, § 451, subd. (c)).[1] He contends his conviction must be reversed because of instructional errors and prosecutorial misconduct during closing argument. We reject defendant's contentions and affirm the judgment.

### FACTS

Fourteen-year-old Glen D. (hereafter Glen) was acquainted with defendant and was with defendant on various occasions during the weekend of Friday,

---

[1] All statutory references are to the Penal Code.

October 21, to Monday, October 24, 1983. Late Friday evening or early on Saturday morning, Glen accompanied defendant and three other youths to Boron High School. While Glen and defendant remained in defendant's dirty black car with no hood, the others left the car and stole some fire extinguishers and first-aid kits from the schoolbuses, placing them in the trunk of defendant's car.

On Sunday, defendant went to Glen's house and asked Glen to help him get rid of some stuff. The two of them then drove out to the desert, stopping at an area which sheltered wildlife and which was covered with sagebrush, yucca trees, cactus and grass. Shortly thereafter a fire started, the cause of which was the subject of conflicting testimony.

The fire was separately reported by two groups of young boys. Eleven-year-old Derrick Sumpter and ten-year-old Russell Stuart were playing near Sumpter's house when they saw the fire. Both boys observed a car parked near the scene of the fire; the car had no hood and was black and gray in color. Stuart recognized the car as belonging to defendant, and Sumpter testified he had seen defendant driving around in the car. Neither boy observed any people at the scene of the fire until the fire department arrived to put it out. Sumpter did observe the car leave the scene of the fire in a hurry, while Stuart testified that at the time he saw the fire, the car was already gone. Stuart then told Sumpter to call the fire department. Stuart remained at Sumpter's residence and saw 11-year-old Samuel Goodwin and 11-year-old Nathan Cathcart arrive on a motorcycle. Goodwin dropped Cathcart off, and when Goodwin later returned, Stuart talked to Goodwin about the fire. Goodwin told Stuart that he (Goodwin) had seen defendant drop what looked like a cigarette out of the car window right before the fire started.

Before Cathcart and Goodwin arrived at Sumpter's residence they had taken turns riding a motorcycle belonging to Goodwin near the desert. Cathcart saw defendant's car parked on a dirt road, and once he and Goodwin decided defendant's car would mark the turnaround point for their motorcycle runs, Goodwin started off in the direction of the car. From the point where he waited for Goodwin, Cathcart saw Glen and defendant running around scattering liquid from a reddish can with pewter gray lettering. Cathcart assumed the liquid was gasoline. Cathcart then saw defendant kneeling on the ground by a small bush and doing something with his hands. The fire started from this bush and spread quickly. Cathcart was certain he had seen defendant and Glen pouring liquid on the ground *before* the fire started. Glen and defendant then threw the cans into the back seat of the car and drove off.

Goodwin had known defendant for about three years and identified him at trial. Goodwin testified he also saw defendant's car parked near the middle of the area where the fire started. When Goodwin had first come down Green Street with Cathcart, he saw defendant and Glen on the side of defendant's car spreading some liquid around. Goodwin testified he saw both spreading this liquid and saw three gas cans utilized. Goodwin was also certain there was no fire at the time defendant and Glen were spreading this liquid around. Defendant and Glen returned to the car, defendant threw a cigarette out onto the ground, and the fire spread "real fast." Defendant and Glen then quickly left the scene. Goodwin did not see either one trying to put out the fire. Goodwin and Cathcart went to a nearby trailer park and told a man there to call the fire department.

The prosecution called Glen to testify at trial. At that time he was 15 years old and committed to Camp Erwin Owen based on his earlier admission of a juvenile petition alleging reckless burning. Glen was a close friend of defendant's. Glen testified that on the weekend in question (Oct. 21-23, 1983), defendant was driving a 1973 black and silver Pontiac Catalina without a hood. Late Friday night, October 21, or early Saturday morning, October 22, Glen was with defendant at Boron High School when the fire extinguishers and first-aid kits were stolen and put in the back of defendant's car. Glen also testified that early Sunday morning defendant arrived at Glen's house and said to Glen, "Come on, Glen, I got to get rid of some stuff." Defendant and Glen then drove out into the desert with three first-aid kits and a single fire extinguisher still in the car.

Glen testified that they buried the metal fire extinguisher and the metal boxes containing the first-aid kits in a rabbit hole. The contents of the first-aid kits were torn up and thrown out into the desert. Glen, who does not smoke, had picked up defendant's cigarettes and matches from the floorboard. Glen testified that the fire actually started when he was burning a piece of paper, threw it out of the car, and was unsuccessful in stomping it out.

Glen and defendant then returned to Glen's home, jacked defendant's car up and put it on blocks, and removed the radiator in order to establish an alibi in case his car had been recognized.

On cross-examination, Glen testified that he and defendant had remained seated in defendant's car for about five minutes before noticing the fire. Defendant noticed the fire, which started on the driver's side, about a minute or two after Glen had thrown the burning piece of paper out and stomped on it. Glen also testified that, in addition to trying to stomp out the rapidly spreading fire, he and defendant threw water on it from two 1-liter plastic

bottles. When they were unable to control the fire, he and defendant left the scene.

When questioned shortly after the fire, Glen first said defendant had thrown a cigarette out the car window but later related the incident with the burning paper. Glen also said he and defendant tried to put the fire out by throwing dirt on it and by stomping on it; Glen mentioned nothing at that time about throwing water on the fire.

Glen's mother, Linda D., testified that Glen told her he and defendant had started the fire in the desert while trying to get rid of evidence of the Boron High School burglary. She also testified that on Sunday morning Glen had shown her a medical kit and told her she could have it. She told Glen to take it to the police. Glen denied ever making this statement.

Gail Cathcart (Nathan's mother) testified she worked at the Rocket Site Mini-Mart outside of Boron. Defendant and Glen had purchased two cans of gasoline from her on a Saturday, but she was not sure if it was the Saturday immediately preceding the fire or some Saturday earlier than that.

Captain Jerry Griggs, an arson investigator with the Kern County Fire Department, investigated and photographed the scene of the fire at about 5:30 p.m. on Sunday, October 23. Griggs testified he looked for accidental causes of the fire, such as lightning, evidence of a car driving through the brush, or discarded burning material but, having found no evidence of these factors, ruled out natural causes for the fire. He observed no evidence at the point the fire originated to indicate water had been applied to the fire.

*Defense Case*

Defendant testified that on Sunday, October 23, about 3 p.m., he and Glen went out in the desert to bury the stolen property. While defendant was cleaning some other "stuff" out of his car, he noticed Glen had been playing with a piece of paper and some matches. Glen told defendant he had put out the burning paper. Defendant later heard some popping sounds and saw a small grass fire. Defendant had a one-liter plastic water bottle in his car, and he and Glen tried to put out the fire with water and by stomping on it, but they were unsuccessful.

Defendant and Glen then went to Glen's house where they put defendant's car up on blocks to establish an alibi. Defendant knew they had been seen by some "kids." Defendant denied he had purchased any gas the day prior to the fire. He denied he had poured any gasoline around the area that was

burned. He denied he had intended to burn anything on that day, and he denied throwing a cigarette out of the car.

On cross-examination, defendant acknowledged that when he first talked to Deputy Duffy, he told Duffy he had lent his car to one Dean Edmonds and denied any involvement in the Boron High School burglary.

## DISCUSSION

I. *Did the trial court err in instructing the jury on aiding and abetting?*\*

. . . . . . . . . . . . . . . . . . . . . .

II. *Did the trial court err in refusing instructions on a lesser included offense?*

Defendant next contends the trial court committed prejudicial error in refusing to instruct the jury pursuant to CALJIC No. 14.85.3, defining unlawfully causing a fire. The charge against defendant was arson of forest land in violation of section 451, subdivision (c). The prosecutor apparently proceeded from the beginning of trial on the assumption that a reckless burning was a lesser included offense of arson. He therefore requested an instruction on unlawfully causing a fire of forest land, an offense described in section 452, subdivision (c), and punishable as a felony. Defense counsel advised the trial court that, as a matter of trial tactics, he did not wish that instruction given as a lesser included offense. At the same time he said he would consider an instruction on unlawfully causing a fire of property, proscribed by section 452, subdivision (d), and punishable as a misdemeanor. Because defense counsel objected to an instruction on unlawfully causing a fire of forest land and because the trial court refused to give an instruction on unlawfully causing a fire of property, no instruction on lesser included offenses was given to the jury.

In 1979, the existing statutes proscribing arson (and encompassing as a requisite mental element that the burning be willful and malicious) were repealed, and the present statutory framework, commencing with section 450, substituted in their place. Prior to 1979, no statute covered unlawfully causing a fire; section 452 was added in 1979 and begins, "A person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." Section 450, subdivision (f), defines "recklessly" to mean "a person is aware of and

---

\*See footnote on page 1174, *ante.*

consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.''

Section 452, subdivision (c), prohibits unlawfully causing a fire of forest land, making such offense punishable as a felony or as a misdemeanor. Section 450, subdivision (b), defines forest land to mean ''any brush covered land, cut-over land, forest, grasslands, or woods.'' Here, the description of the Bleits Wildlife Foundation property which was burned shows it is within the statutory definition of forest land. ██ Fatal to defendant's argument that he was entitled to an instruction pursuant to section 452, subdivision (d), prohibiting unlawfully causing a fire of property, is the definition of property found at section 450, subdivision (c). '''Property' means real property or personal property, *other than* a structure or forest land.'' (Italics added.)

██ Probably due to the relative newness of the statute, we have found no authority that unlawfully causing a fire is a lesser and necessarily included offense in the crime of arson; the question thus presented appears to be one of first impression. The critical distinction between arson, as defined in section 451, and unlawfully causing a fire, as defined in section 452, is the mental state with which the burning is carried out. Pursuant to the express terms of section 451, arson is a burning which is committed willfully and maliciously; willfully is defined in section 7, subdivision 1 to imply ''simply a purpose or willingness to commit the act . . . .'' Section 450, subdivision (e), defines maliciously for the purpose of that chapter to import ''a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.'' On the other hand, unlawfully causing a fire occurs when a person acts recklessly, as defined above.

██ ██ The traditional test for determining a necessarily included lesser offense—whether in committing the legal elements of the charged (greater) offense the perpetrator must necessarily commit the legal elements of a lesser offense—does not provide definitive guidance when the legal element in question is a mental one. The facts of the instant case are illustrative. Applying the traditional test literally, arson occurs when a burning is willful and malicious and can be completed without the reckless mental state necessary to sustain a conviction of unlawfully causing a fire. Thus unlawfully causing a fire would not be a necessarily included lesser

offense of arson. However, in this case the objective evidence of the burned acreage is settled, and defendant does not deny that he and Glen were present at the scene and were engaged in burning scraps of paper when the fire started. Defendant contends the fire was accidental, resulting from Glen's ineffective stomping out one of those burning scraps; defendant denies any flammable liquid was applied to the grassland to accelerate an intentional burning. The prosecution, on the other hand, argues the fire was intentionally set by defendant after he and Glen spread gasoline over the ground so that defendant and Glen could destroy evidence of a prior burglary. Under either version of the evidence, defendant was responsible for the fire; whether defendant was *criminally* responsible for the fire rested solely upon the jury's determination of his mental state.

Between the extremes of accident, vitiating criminal liability, and intent, supporting the highest degree of criminal responsibility, lies the area of criminal negligence, equivalent in the arson statutes to the reckless conduct which will support a conviction for unlawfully causing a fire. In this sense, the arson statutes are similar to those covering homicide. The killing of one human being by another may be accidental and thus not the basis for criminal liability, or it may be the result of such inexcusable negligence that it constitutes involuntary manslaughter, or it may be premeditated and deliberate and therefore constitute first degree murder. Since involuntary manslaughter is ordinarily deemed a lesser included offense of murder (see, e.g., *People* v. *Edwards* (1985) 39 Cal.3d 107, 116-117, fn. 10 [216 Cal.Rptr. 397, 702 P.2d 555]; *In re McCartney* (1966) 64 Cal.2d 830, 831 [51 Cal.Rptr. 894, 415 P.2d 782]), by analogy we conclude that unlawfully causing a fire is a lesser included offense of arson.

This conclusion requires that we also hold defendant was entitled to a jury instruction on unlawfully causing the burning of forest land, either upon request or, since there was evidence from which the jury could conclude the fire was recklessly but not intentionally started, sua sponte by the trial court. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311].) Moreover, the trial court's sua sponte duty to instruct on unlawfully causing a fire as a lesser included offense of arson could not be obviated by defense counsel's objection to such an instruction since "[t]he jury should not be constrained by the fact that the prosecution and defense have chosen to focus on certain theories. 'Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense. [Citation omitted.]' [Citation omitted.]" (*Id.,* at p. 324.)

However, the trial court's failure in the instant case to instruct the jury on the lesser included offense of unlawfully causing a fire does not require

reversal since defense counsel, in objecting to the instruction, expressed a definite tactical decision that the instruction not be given. Defense counsel stated, "That's my client's wish [to be tried on the original charge and either be found guilty or not guilty] and I also feel that there is no evidence to support the lesser included offense and that in addition I don't feel that it is a necessarily included offense. Basically, as a tactical matter, I am asking the Court to withdraw those particular instructions." Any contention on appeal that the trial court erred in failing to instruct on the lesser included offense must fail under the doctrine of invited error. (See *People* v. *Wickersham, supra,* 32 Cal.3d at pp. 330-336; *People* v. *Beach* (1983) 147 Cal.App.3d 612, 625 [195 Cal.Rptr. 381].)

We emphasize that our conclusion in this case is highlighted by the equivocal nature of the evidence. When there is some evidence deserving of consideration by the jury, from which the jury could conclude that the lesser, but not the greater, offense had been committed, the defendant is entitled to an instruction on that lesser offense, even in the absence of a request. In fact, and we emphasize for the guidance of trial judges, when there is some evidence of a lesser included offense which is worthy of the jury's consideration, the court *must* instruct on that lesser included even if the defendant expresses a tactical objection. As we have noted, the defendant has no right to a verdict of not guilty when the evidence establishes he is guilty of an offense, although one lesser than that charged by the People. The doctrine of invited error does not excuse the trial court in the first instance from giving an appropriate instruction on a necessarily included offense; this doctrine is applied only in review of a conviction when the defendant claims on appeal that he was prejudiced by omission of any instruction on lesser included offenses. Only when there is *no* evidence worthy of consideration by the jury or when an instruction on a lesser included offense would be inconsistent with the defendant's theory of defense is the failure to instruct on a lesser included offense proper. (See *People* v. *Wickersham, supra,* 32 Cal.3d at pp. 324-326.) The defense in this case was not denial, but accident; assessing the version of the facts presented by defendant and Glen against that given by the four young boys, the defense version, even if improbable, was certainly not impossible and was not inconsistent with expert testimony about the cause of the fire.

However, in many prosecutions for arson, objective evidence that the fire was intentionally started (such as the residue of a flammable liquid or the remains of an incendiary device) will be presented to the jury, and the only defense will be that the defendant was not the one who did it. ▮ Under such circumstances, the court has no sua sponte duty to instruct on the lesser included offense of unlawfully causing a fire and might well reject a request for that instruction as inconsistent with the defense and unwarranted by the

evidence. (*People* v. *Wickersham, supra,* 32 Cal.3d at pp. 324-325.) 
Thus the last sentence in the use note to CALJIC No. 14.85.3 (4th ed. 1986 pocket pt.), that "[t]his instruction [on unlawfully causing a fire] should not be given if the prosecution is for arson, Penal Code § 451," is applicable when there is no evidence to suggest the offense is less than that charged but does not preclude use of this instruction when appropriate as a lesser included offense. We believe this result furthers the legislative purpose in revising the arson statutes to punish reckless burning by assuring that those whose conduct is not proven intentional and malicious beyond a reasonable doubt can still be penalized when the jury is satisfied the conduct was reckless as defined in section 450, subdivision (f).

 We therefore conclude that although the trial court erred in failing to instruct the jury in this case on unlawfully causing a fire of forest land as a lesser included offense of arson, this error was invited by defense counsel and does not therefore require reversal of defendant's conviction.

III. *Was defendant's trial prejudicially tainted by prosecutorial miscon- duct during closing argument?*\*

. . . . . . . . . . . . . . . . . . . . . . . .

We affirm the judgment.

Hanson (P. D.), Acting P. J., and Best, J., concurred.

---

\*See footnote on page 1174, *ante.*