## Commonwealth v. Pennell

*Jeffrey Leber, assistant district attorney,* for the Commonwealth.
*Peter Campana,* for defendant.

LEETE, *P.J.,* January 29, 1991 — Before the court are omnibus pretrial motions by defendant. The motions include a writ of habeas corpus challenging the sufficiency of the evidence produced at the preliminary hearing as well as a motion to suppress a statement taken from defendant by the Pennsylvania State Police.

Defendant was charged with two counts of involuntary manslaughter, causing a catastrophe, risking a catastrophe, and reckless endangerment. These charges were originally filed before District Justice Katherine Garrote, who found that the Commonwealth had not established a prima facie case. Thereafter, the Commonwealth refiled the charges. Justice Garrote recused herself and the case was then heard by District Justice Edward Easton who,

after hearing, found a prima facie case and bound the charges against defendant over to court for trial.

Both the Commonwealth and defense submitted a transcript of the preliminary hearing before Justice Easton and stipulated that the facts therein were to be considered by the court.

These facts, construed in a manner most favorable to the Commonwealth, may be summarized as follows: Defendant resided in an upstairs apartment over Kline's Gift Shop in Pike Township, Potter County, Pennsylvania. There were other apartments on the second floor of the building as well. Defendant's apartment shared a common wall with an apartment which housed Carol Schroeder and her daughter Melody, the victims herein. On the evening of January 26, 1990, defendant left work at a nearby factory at midnight and visited several taverns consuming, by his own admission, between nine and 11 beers. Later, he returned home to his apartment, sat at the kitchen table, watched television and apparently smoked three or four cigarettes. It is unknown exactly what time defendant went to bed. He testified it was his custom to go to bed between 3:30 and 4 a.m. Defendant also customarily emptied his ashtray into the wastebasket before going to bed. After being asleep, he awakened and saw the kitchen wall on fire, with flames coming out of a wastebasket sitting along the common wall with the Schroeder apartment. As a result of the fire, the victims perished.

Defendant had not been sleeping long when he awoke and saw the fire. Defendant was, by his own admission, drunk. The alarm was phoned into the Tioga County Communications Center at 4:06 a.m. on January 27. The Fire Marshall, through his testimony, essentially ruled out external causes of

the fire and concluded that the fire originated due to human involvement.

While much of the Commonwealth's evidence resulted from defendant's statement, which has been challenged, the court will consider all of the Commonwealth's evidence for the sole purpose of discussing the habeas corpus.

The central issue raised by defendant's motion is whether or not the Commonwealth has established a prima facie case, and especially the element of culpability. The Commonwealth obviously must establish each and every element necessary to constitute the offenses charged. On review, the court must accept the Commonwealth's evidence as true, and may also consider "inferences reasonably drawn from the evidence of record which would support a verdict of guilty. . . ." The evidence must be read "in the light most favorable to the Commonwealth's case." *Commonwealth v. Snyder,* 335 Pa. Super. 19, 483 A.2d 933 (1984). The element of culpability in each offense charged is either recklessness or gross negligence. Therefore, the court must determine whether the actions of defendant in smoking cigarettes and dumping his ashtray into a waste basket constituted recklessness or gross negligence under the circumstances of this case. Because of the court's determination of this central issue, it will not be necessary to consider the balance of defendant's motions.

It may be helpful to point out what the Commonwealth's evidence does *not* establish. The Commonwealth has not established exactly how long after the ashtray was dumped that the fire started. Reviewing Mr. Pennell's statement, one can infer that the range of times was approximately between six minutes and 36 minutes, based upon the time that he customarily went to bed. The exact time he went to

bed on the evening in question has not been established. Similarly, the Commonwealth has failed to establish any custom or habit on the part of defendant of dumping embers or hot ashes into the trash. The closest the Commonwealth came was in defendant's statement that he had, on occasion, fallen asleep at the table and dropped cigarettes.

Involuntary manslaughter is defined for our purposes as follows: "A person is guilty of involuntary manslaughter when, as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S. §2504. The remaining offenses, specifically recklessly endangering another person, and causing or risking a catastrophe, all require the element of recklessness. 18 Pa.C.S. §§2505 and 3302.

Pennsylvania law does not contain an express definition for gross negligence, even though this term is used in various statutes. Recklessness seems to equal or approximate gross negligence, according to our Supreme Court. *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983). The Crimes Code defines "negligently" in 18 Pa.C.S. §302(b)(4) as the lowest grade of culpability. In *Lobiondo, Id.,* the Supreme Court referred to recklessness as the next highest degree of culpability, and noted that "the legislature has apparently equated recklessness with acting in a 'grossly negligent manner.' " *Lobiondo, supra.*

Our Crimes Code defines recklessness as follows:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and

degree that considering the nature and intent of the actor's conduct the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S. §302(b)(3).

To establish involuntary manslaughter, where, as here, the act involved is essentially lawful, the conduct of the defendant must be such a departure from that of a reasonable man under the same circumstances that the defendant "consciously disregarded or in a gross departure from a standard of reasonable care, failed to perceive a substantial and unjustifiable risk that his action might cause death or serious bodily harm." *Commonwealth v. Youngkin*, 285 Pa. Super. 417, 427 A.2d 1356 (1981); *Commonwealth v. Agnew*, 263 Pa. Super. 424, 398 A.2d 209 (1979).

The court must now determine whether or not the actions of defendant constituted reckless conduct such as would give rise to criminal liability. From the court's point of view, it is evident that the conduct of defendant, as he testified himself, was negligent. The question is whether or not defendant's conduct is something more than negligent. Does it reach the higher degree of culpability referred to by the Supreme Court in *Lobiondo, supra?* A detailed review of case law in Pennsylvania and several other states has failed to disclose a single case with facts similar to the instant case. In fact, no cases have been found dealing with recklessness arising from careless smoking. Several cases, however, are illustrative of the type of situation which may or may not give rise to involuntary manslaughter.

In *Commonwealth v. Keysock,* 236 Pa. Super. 474, 345 A.2d 767 (1965), the court affirmed the

involuntary manslaughter conviction of a defendant who had rebuilt an old car, and driven it on a wet highway at relatively high speeds. The car was not inspected and had bad tires on it. An accident resulted in which the other driver was killed.

*Commonwealth v. Rosov,* 262 Pa. Super. 121, 396 A.2d 675 (1978), was also a motor vehicle case. The defendant's conviction for involuntary manslaughter was affirmed where he repeatedly took his eyes off the road to check a defective fuel gauge as he was rounding a curve near the top of a hill. The defendant crossed several lanes of traffic and crashed into a car coming the other way.

The Superior Court, in *Commonwealth v. Gilliland,* 281 Pa. Super. 354, 422 A.2d 206 (1980), did not find the element of recklessness present when a defendant, driving his boat on a lake in near-dark conditions, crashed into another boat which he had failed to see. The court found the defendant's conduct to be essentially negligent, but not grossly negligent or reckless as the conduct did not manifest an indifference to human life.

In accord is the case of *Commonwealth v. Trainor,* 252 Pa. Super. 332, 381 A.2d 944 (1977). In that case, the defendant sideswiped another truck with his truck. His vehicle became airborne and landed on top of a car, killing the occupants. Defendant had briefly crossed into the wrong lane. The Superior Court found no criminal liability, as the accident had been caused by the defendant's "brief inattention to the road ahead."

These cases indicate that something far more than ordinary negligence or inadvertence is required to support a charge of involuntary manslaughter. *Rosov, supra,* for example, involved the driver *repeatedly* taking his eyes from the road, and drifting across several lanes. Undoubtedly, the result would

have been different had the defendant's conduct been limited to a simple instance of taking his eyes from the road. In *Keysock, supra,* defendant violated an acceptable standard of conduct in several ways. His speed, the poor tires, and the weather conditions all played a role in the affirmance of his conviction.

Perhaps the most relevant case for consideration is a case originating here in Potter County, *Commonwealth v. Penn Valley Resorts Inc.,* 343 Pa. Super. 387, 494 A.2d 1139 (1983). Defendant corporation's manager had booked a large party for minors and served them alcoholic beverages. One of the minors became visibly intoxicated and belligerent, and defendant's agent continued to serve him. Defendant's agent stopped the young man's friends from calling the police twice and at one stage, handed his car keys to him. After defendant's agent left the scene, the young man left in his car and was killed shortly thereafter in an accident. Judge Hester, in affirming the corporation's conviction for involuntary manslaughter, noted that "the serving of intoxicating beverages to a minor or visibly intoxicated person alone may not constitute involuntary manslaughter or reckless endangerment. Here, it was the serving of alcohol, coupled with several crucial elements known to Clancy which established causation, and therefore, the offenses." *Penn Valley Resorts, supra.*

Comparing *Penn Valley* to the instant case, it is apparent that the recklessness present there is lacking here. Clancy, as defendant's agent, indeed acted recklessly not only by serving the intoxicated and belligerent young man, but also by returning his keys to him, and stopping friends from summoning police assistance. Such conduct is not present here, nor anything approaching it. Defendant's conduct

here does not contain other "crucial elements" as referred to by Judge Hester.

Another involuntary manslaughter case that shows the type of conduct necessary to support a conviction is *Commonwealth v. Feinberg,* 211 Pa. Super 100, 234 A.2d 913 (1967), aff'd 433 Pa. 558, 253 A.2d 636 (1969). Defendant merchant ran a store in a Skid Row neighborhood and sold large quantities of Sterno, or canned heat containing poisonous methanol, to persons he knew would drink it. He continued sales even after a new shipment came in clearly designating the contents as poison. Various persons were fatally poisoned as a result.

The Superior Court found defendant's actions in making sales of Sterno grossly negligent, demonstrating "a wanton and reckless disregard for the welfare of those whom he might reasonably have expected to use the product for drinking purposes." *Feinberg, supra.* The Supreme Court later affirmed these convictions.

The requirement of recklessness or gross negligence is, therefore, a substantial one, and one in which the defendant disregarded or failed to perceive a great risk that his conduct may be deadly toward others.

Ordinary criminal negligence, which according to statute is a *lesser* standard than either gross negligence or recklessness, has been described as follows:

"We must remember that criminal negligence involves a gross deviation from reasonable care such that it would be shocking to allow the actor's lack of awareness to excuse his actions in the circumstances. The criminally negligent act has been done so heedlessly, so indifferently and so grossly contrary to common experience that it becomes intolerable to reasoning minds that the actor

did not perceive the risk of harm created by his conduct. In such cases, the law presumed wantonness even though the circumstances do not allow proof beyond a reasonable doubt the actor's subjective awareness of wrongdoing. 'Criminal negligence' is a breach of duty so flagrant in the circumstances that we may safely indulge in the legal fiction that it was committed with actual intent to injure; see *Schultz v. State,* 89 Neb. 34, 130 N.W. 972 (1911); it is far from mere ordinary negligence or inadvertent; it is 'great' negligence incompatible with the proper regard for human life; *People v. Peabody,* 46 Cal. App. 3d 43, 119 Cal. Rptr. 780 (1975); *State ex rel. Zent v. Yanny,* 244 Wis. 342, 12 N.W. 2d 45 (1943)." *Commonwealth v. Heck,* 341 Pa. Super. 183, 491 A.2d 212 (1985).

The above-quoted definition of ordinary criminal negligence from *Heck, supra,* carries a burden of proving substantial misconduct or deviation from a reasonable man standard. Here, the Commonwealth's evidence must establish even more, namely recklessness, or a conscious disregard of a known risk, to defeat defendant's habeas corpus petition.

All that the Commonwealth has presented us is that, after consuming alcoholic beverages, defendant apparently emptied an ashtray into a wastebasket, and that after some passage of time, a fire resulted and the victims died as a result. There has been no showing that defendant actually intended such a result, or was in the custom of engaging in that type of conduct. Can it be said that emptying the ashtray, some undefined period of time after defendant quit smoking, with the result that a fire started some time later, meets this high standard of recklessness? Or, was defendant's conduct negligent, inadvertent, or something other than reckless?

Without more evidence to establish culpability, the court cannot say as a matter of law that defendant's conduct was reckless as required to prove the elements of all the offenses charged. In fact, it would require speculation and overreaching by the court to find defendant's conduct criminally negligent, let alone reckless. The Commonwealth's evidence simply does not rise to the required level of culpability. The testimony viewed most favorably to the Commonwealth shows no "conscious" disregard nor that the risk was "substantial and unjustifiable." If there was evidence that defendant's admitted intoxication, as opposed to inadvertence, caused him to do as he did, and that otherwise, his conduct would have been different, perhaps that would strengthen the Commonwealth's case. There is no such evidence before the court.

Of interest in this regard is the California case of *People v. Hooper,* 181 Cal. App. 3d 1174, 226 Cal. Rptr. 810 (1986). Defendant there was charged with unlawfully causing a fire, allegedly attempting to burn contraband from a theft. The offense required the element of recklessness. After defining recklessness in terms similar to Pennsylvania law, the court noted the statute contained the following express language: "A person who created such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." *Id.* The definition then encompassed intoxication in terms of making a defendant aware of the risk he creates despite intoxication.

In the instant case, there is no evidence that defendant was aware of the risk, with or without intoxication. Nor is there any evidence that intoxication was any factor. What emerges here, after careful analysis, is careless disposal of smoking

material with tragic consequences. Accordingly, defendant must be discharged.

The court reaches this result cautiously, recognizing that two innocent persons lost their lives, allegedly as a result of defendant's negligence. That tragic fact, however, cannot in itself justify a finding of criminal liability based on recklessness when there is so little evidence.

In view of the court's determination, it is unnecessary to determine the other issues raised by defendant's motion.

Accordingly, the following order is entered.

## ORDER

And now, January 29, 1991, defendant's omnibus pretrial motion in the form of a petition for writ of habeas corpus is hereby granted, and the Commonwealth having failed to establish a prima facie case against defendant on all of the charges now outstanding against him, accordingly defendant is discharged.